

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-5-2008

# Gary v. Braddock Cemetery

Precedential or Non-Precedential: Precedential

Docket No. 06-3469

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gary v. Braddock Cemetery" (2008). *2008 Decisions.* Paper 1502.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1502

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3469

KARL E. GARY; OSCAR R. IAMS; SHIRLEY J. IAMS;
CHARLES W.

PHILLIPS; DAVID HIGGENBOTHAM; JUDITH
HIGGENBOTHAM; MARY ANN

NEELY; CHARLES AMBROSE WHITLATCH, JR.;
DEBRA ANN WHITLATCH;

DONALD WHITLATCH; FRANCIS E. WHITLATCH;
HENRY ABNER WHITLATCH;

NORMA JEAN WHITLATCH; ROBERT PHILLIPS;
WILLIAM H. WHITLATCH;

KATHY L. WHITLATCH; ALFRED R. CHAMBERS, as
power of Attorney for

Gary J. Pierson; ALFRED R. CHAMBERS, JR.; ALBERT R.
CHAMBERS,

as Power of Attorney for Winifred J. Pierson; PAUL R.
PHILLIPS;

BARBARA SWARTZMILLER; CHARLES E.
WHITLATCH; PATRICIA WHITLATCH;

NETTIE PHILLIPS MORRIS; EDNA PHILLIPS
SCHRADER; VIRGINIA

KENNEDY; HELEN KELLY; MARY THORNE;
KENNETH L. PHILLIPS

Appellants

v.

THE BRADDOCK CEMETERY; CONSOL ENERGY INC,
the successor

and/or assign of Rheinbraun U.S. Corporation; CNX COAL,

the successor and/or assign of Consol Pennsylvania Coal

Company

No.  06-3617

KARL E. GARY; OSCAR R. IAMS; SHIRLEY J. IAMS;
CHARLES W.

PHILLIPS; DAVID HIGGENBOTHAM; JUDITH
HIGGENBOTHAM; MARY ANN

NEELY; CHARLES AMBROSE WHITLATCH, JR.;
DEBRA ANN WHITLATCH;

DONALD WHITLATCH; FRANCIS E. WHITLATCH;
HENRY ABNER WHITLATCH;

NORMA JEAN WHITLATCH; ROBERT PHILLIPS;
WILLIAM H. WHITLATCH;

KATHY L. WHITLATCH; ALFRED R. CHAMBERS, as
power of Attorney

for Gary J. Pierson; ALFRED R. CHAMBERS, JR.;
ALFRED R.

2

CHAMBERS, as Power of Attorney for Winifred J. Pierson;

PAUL R. PHILLIPS; BARBARA SWARTZMILLER; CHARLES E.

WHITLATCH; PATRICIA WHITLATCH; NETTIE PHILLIPS MORRIS; EDNA

PHILLIPS SCHRADER; VIRGINIA KENNEDY; HELEN KELLY; MARY THORNE;

KENNETH L. PHILLIPS

v.

THE BRADDOCK CEMETERY; CONSOL ENERGY, the successor and/or

assign of Rheinbraun U.S. Corporation; CNX COAL, the successor

and/or assign of Consol Pennsylvania Coal Company

Consol Energy; CNX Coal,

Appellants

No. 06-3680

KARL E. GARY; OSCAR R. IAMS; SHIRLEY J. IAMS;

3

CHARLES W.

PHILLIPS; DAVID HIGGENBOTHAM; JUDITH HIGGENBOTHAM; MARY ANN

NEELY; CHARLES AMBROSE WHITLATCH, Jr.; DEBRA ANN WHITLATCH;

DONALD WHITLATCH; FRANCIS E. WHITLATCH; HENRY ABNER WHITLATCH;

NORMA JEAN WHITLATCH; ROBERT PHILLIPS; WILLIAM H. WHITLATCH; KATHY

L. WHITLATCH; ALFRED R. CHAMBERS, as power of Attorney for

Gary J. Pierson; ALFRED R. CHAMBERS, JR.; ALFRED R. CHAMBERS,

as Power of Attorney for Winifred J. Pierson; PAUL R. PHILLIPS;

BARBARA SWARTZMILLER; CHARLES E. WHITLATCH; PATRICIA

WHITLATCH; NETTIE PHILLIPS MORRIS; EDNA PHILLIPS SCHRADER;

VIRGINIA KENNEDY; HELEN KELLY; MARY THORNE; KENNETH L. PHILLIPS

v.

BRADDOCK CEMETERY; CONSOL ENERGY, the successor and/or assign

4

of RHEINBRAUN U.S. Corporation; CNX COAL, the successor and/or

assign of Consol Pennsylvania Coal Company

CONSOL ENERGY, the successor and/or assign of Rheinbraun U.S.

Corporation; CNX COAL, the successor and/or assign of Consol

Pennsylvania Coal Company,

Appellants

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 05-cv-01438
District Judge: Hon. David S. Cercone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2007
(Filed: February 5, 2008)

Before: McKee, Chagares and Hardiman, <u>Circuit Judges</u>

Louis M. Tarasi, Jr.

Colm W. Kenny

Tarasi, Tarasi & Fishman

510 Third Avenue

Pittsburgh, PA 15219

*Attorneys for Karl E. Gary, et al.*

Joseph A. Katarincic

Jerri A. Ryan

Thorp, Reed & Armstrong

301 Grant Street

One Oxford Centre, 14th Floor

Pittsburgh, PA 15219

*Attorneys for Consol Energy and CNX Coal*

Rodger L. Puz

Dickie, McCamey & Chilcote

Two PPG Place

Suite 400

Pittsburgh, PA 15222-5402

*Attorney for Braddock Cemetery*

**OPINION**

McKee, <u>Circuit Judge</u>

This matter involves two consolidated appeals. In No. 06-3469, Karl E. Gary, and other owners of burial plots in Braddock Cemetery (collectively, "Plaintiffs"), appeal the

6

district court's dismissal of the action they brought under 42 U.S.C. § 1983 against Braddock Cemetery, Consol Energy, and Consol Pennsylvania Coal Company (collectively, "Defendants"). The district court dismissed that suit after concluding that it lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. In No. 06-3617, Consol Energy and Consol Pennsylvania Coal Company (collectively "Consol") appeal the district court's failure to rule on their motion for sanctions under Fed. R. Civ. P. 11, before invoking *Rooker-Feldman* and dismissing Plaintiffs' complaint. The district court had "temporarily" denied Consol's Rule 11 motion, pending the outcome of the appeal of the dismissal of the complaint. Consol argues that the district court should have ruled on its Rule 11 motion before entering a final order. We agree. For the reasons that follow, we will affirm the district court's dismissal of the Plaintiffs' action based upon the *Rooker-Feldman* doctrine in

7

06-3469, but we will remand in 06-3617 and order the district court to rule on Consol's motion for sanctions.

## I.

The facts of this case are recited in the very thorough and thoughtful May 17, 2006, Report and Recommendation of Magistrate Judge Francis X. Caiazza (the "R and R"), which is attached hereto as an appendix. As the Magistrate Judge accurately notes: "[t]his case proves the axiom that 'the wheels of justice grind slowly.' [It has] occupied state courts since March 1991 when the first of four consolidated claims was filed." App. at 2.

The R and R recites the factual and procedural history of this dispute, and we need not reiterate it here. Rather, we only note that this litigation arises out of a two week mining operation that began in 1991. Thereafter, some purchasers of burial plots sued the Cemetery and Consol in the Court of

8

Common Pleas for Greene County, Pennsylvania challenging the Cemetery's right to execute a lease or subsidence agreement with the mining company, and alleging various violations of state law that purportedly interfered with the ground support of their burial plots resulting in subsidence of those plots.

All liability issues were resolved in favor of the Plaintiffs based on summary judgment motions. The state court then held a nine day jury trial limited to the issue of damages. After all proof had been submitted, the jury was instructed that damages could be calculated based on the value of the coal taken from the Cemetery. Using this measure, the jury assessed damages against Consol and the Cemetery.

On appeal, the Pennsylvania Superior Court determined that the damage award should not have been based on the value of the coal extracted, because the Plaintiffs did not own the mineral rights to the burial plots. The Court also found that the

9

Court of Common Pleas had erred in granting summary judgment in favor of the Plaintiffs on a number of claims. Accordingly, the Superior Court reversed the order of the Court of Common Pleas, and remanded the matter for a new trial encompassing liability as well as damages.

As the Magistrate Judge sets forth in his R and R, on retrial, the trial court explained the jury's finding in favor of the defendants as follows:

> The jury, after a three-week trial and after hearing that there was no visible damage to the cemetery and that the sale of lots and burials had continued up to at least the time of trial, and after hearing that no one, plaintiff or otherwise, had requested the transfer of the remains of his or her loved one to another cemetery, found that whatever subsidence had occurred did not interfere with the reasonable and proper enjoyment of the lots as burial sites.

*Whitlatch v. Braddock Cemetery*, No. 152-1991, slip op. at 9-10 (Pa. Common Pleas Nov. 5, 2001). App. at 6.

10

Plaintiffs filed post-trial motions in which they argued, among other things, that allowing the verdict to stand would amount to an uncompensated "taking" of their property. The trial court rejected that claim and Plaintiffs appealed to the Pennsylvania Superior Court; their brief raised seventeen issues.[1] Their claims included the argument that the jury's

[1] Given the number of issues that were raised on appeal, we (like the Superior Court) are reminded of the following quote from our colleague, Judge Aldisert:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility-A View From the Jaundiced Eye of One Appellate Judge,"*Capital University Law Review* 445, 458

11

verdict "effected a *de facto* condemnation of [the Plaintiffs'] support estate, entitling [them] to just compensation under the Fifth Amendment." The Superior Court rejected that argument, and affirmed the order of the Court of Common Pleas. The Supreme Court of Pennsylvania refused *allocatur*, and Plaintiffs did not request a writ of *certiorari* from the United States Supreme Court, to raise their Fifth Amendment "taking" claim. Instead, they filed the instant suit under 42 U.S.C. § 1983 in the United States District Court for the Western District of Pennsylvania.

They argue that the Supreme Court of Pennsylvania's denial of their petition for reconsideration, "clothed the Defendants under color of state law with the authority to take private property without just compensation." They claim that the Defendants' actions thus resulted in an unconstitutional

(1982).

12

"taking" of their "support estates" in violation of the United States and Pennsylvania Constitutions.

Consol responded by serving Plaintiffs with a copy of the motion for Rule 11 sanctions that they intended to file with the district court pursuant to Rule 11(c)(1).[2] In their accompanying letter, dated November 1, 2005, Consol cited the *Rooker-Feldman* doctrine, the lack of any state action as required for an action pursuant to § 1983, the bar of the applicable statute of limitations, and the doctrines of collateral estoppel and *res judicata* in explaining why Plaintiffs' federal suit was barred. Consol warned that in light of the long history of litigation and the final state court decision in Defendants' favor, Plaintiffs' federal suit was frivolous and in Consol's opinion, meant only

---

[2] Fed. R. Civ. P. 11(c)(1) requires a litigant to give advance notice of the intent to move for sanctions by properly serving the opposing party with a copy of the motion prior to filing with the court.

to harass. When Plaintiffs did not dismiss their complaint as requested in the Rule 11 notice, Consol filed a motion to dismiss together with its motion for Rule 11 sanctions.[3]

The case was referred to a Magistrate Judge who advised Consol at a status conference that he would deny their Rule 11 motion without prejudice to Consol's right to renew that motion after a ruling on the motion to dismiss. Subsequently, the Magistrate Judge issued the aforementioned R and R explaining that Plaintiffs' action was barred by the *Rooker-Feldman* doctrine. The R and R also explained that Plaintiffs could not maintain a suit under § 1983 because the injuries they complained of were not the result of any state action. The district court subsequently adopted the R and R and dismissed the complaint, *Gary v. Braddock Cemetery*, 2:05cv1438 (W.D. Pa. June 27, 2006) (memorandum order granting motion to

---

[3] The Cemetery also filed a motion to dismiss.

dismiss). This appeal followed.

Thereafter, Consol renewed its motion for Rule 11 sanctions, and the Magistrate Judge ordered Plaintiffs to respond to Consol's Rule 11 motion by August 3, 2006. However, on July 23, 2006, Plaintiffs filed their Notice of Appeal in 06-3469 challenging the district court's dismissal of their Complaint. On July 24, prior to receiving any response from Plaintiffs on the Rule 11 motion, the Magistrate Judge issued an order which "temporarily" denied the Rule 11 motion while explaining that the motion would be stayed pending resolution of Plaintiffs' appeal. The district court overruled Consol's objections in an order dated August 3, 2006. Thereafter, Consol filed the Notice of Appeal in No. 06-3617 challenging the district court's failure to rule on the Rule 11 motion before dismissing the Complaint.

## II.

We first address the district court's dismissal of the

15

complaint for lack of subject-matter jurisdiction based on the *Rooker-Feldman* doctrine. [4]  That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court. . ..".  *See also Desi's Pizza, Inc. v. City of Wilkes Barre*, 321 F.3d 411, 419 (3d Cir. 2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to

---

[4] Our review of a dismissal for lack of subject matter jurisdiction pursuant to *Rooker-Feldman* is plenary. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

16

review state court decisions." *Desi's Pizza*, 321 F.3d at 419.

After reviewing the arguments challenging the district court's dismissal for lack of subject matter jurisdiction, we conclude that Magistrate Judge Caiazza adequately explained why the district court lacked subject matter jurisdiction in the thoughtful R and R that the district court adopted and which we attach as an appendix to this opinion. Inasmuch as we can add little to the explanation offered in that R and R, we will affirm the dismissal of Plaintiff's complaint substantially for the reasons set forth therein. *See* App. at 7-10.[5]

---

[5] The Magistrate Judge recited our pre-*Exxon* formulation of the doctrine, wherein a federal action is barred either "where the claim raised in federal court was actually litigated in state court" or "where the federal claim is inextricably intertwined with the state adjudication." We note that several circuit courts of appeals have revisited the appropriate contours of the "inextricably intertwined" prong in the wake of the *Exxon* decision. *See, e.g. Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005); *McCormick v. Braverman*, 451 F.3d 382, 393-94 (6th Cir. 2006). The doctrine clearly applies here under either formulation of the doctrine. However, caution is

17

We need only add that this action falls squarely within that class of actions prohibited by the *Rooker-Feldman* doctrine, even as limited by the Supreme Court's recent opinion in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). Plaintiffs, the "state-court losers," brought this suit "complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of [that] judgment." *Exxon Mobil*, 544 U.S. at 284. Because federal district courts lack subject matter jurisdiction to entertain appeals from state courts, the district court correctly adopted the reasoning of the R and R and dismissed this action for lack of subject-matter jurisdiction. *Rooker*, 263 U.S. at 416; *Feldman*, 460 U.S. at 482; *Exxon Mobil,* 544 U.S. at 292. We will therefore affirm the

now appropriate in relying on our pre-*Exxon* formulation of the *Rooker-Feldman* doctrine.

18

district court's order dismissing this suit substantially for the reasons set forth in the R and R.

## III.

Our affirmance of the dismissal of the Complaint does not end our discussion because, in 06-3617, Consol argues that the district court erred in not ruling on the Rule 11 motion before entering final judgment.[6] We agree. We usually review

---

[6] Rule 11 imposes specific duties upon attorneys practicing before the federal courts. It provides in part:

> Every pleading, written motion, and other paper shall be signed by at least one attorney of record . . . . By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the

a district court's ruling on a motion for sanctions under Rule 11 for an abuse of discretion. *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). Here, however, there is nothing to review because the district court never ruled on the propriety of Rule 11 sanctions even though it entered a final order dismissing the suit.

Almost twenty years ago, we adopted a supervisory rule "that counsel seeking Rule 11 sanctions must file their motions before entry of final judgment in the district court." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988). We explained that "[s]wift disposition of a Rule 11 motion is essential so that any ensuing challenge to it might be included

> establishment of new law . . . . If, after notice and a reasonable opportunity to respond, the court determines that [this rule] has been violated, the court may . . . impose an appropriate sanction upon the attorneys . . . that . . . are responsible for the violation.

Fed. R. Civ. P. 11.

with the appeal on the merits." *Id.* at 99. The supervisory rule was intended to eliminate piecemeal appeals and "serve[] the interest of judicial economy without risking a significant waste of district court efforts." *Id.* Although we did not explicitly state that a district court was also required to *rule* on a motion for Rule 11 sanctions prior to entry of final judgment, *Pensiero* clearly anticipates that a district court would rule on the motion for sanctions prior to, or contemporaneously with, entering final judgment. *See id.* ("We will henceforth require prompt action by a litigant whenever a Rule violation appears. In that way, *the district court will be able to decide the matter in a timely fashion so as to eliminate additional appeals*.") (emphasis added).

Thus, following *Pensiero*, we held in *Simmerman* that a district court imposing Rule 11 sanctions *sua sponte* must do so prior to the entry of final judgment. There, we explained:

21

> There is no inordinate burden in requiring the district court to raise and resolve any Rule 11 issues prior to or concurrent with its resolution of the merits of the case. . . . Similarly, concurrent consideration of challenges to the merits and the imposition of sanctions avoids the invariable demand on two separate appellate panels to acquaint themselves with the underlying facts and the parties' respective legal positions. In the context of a Rule 11 violation, the court and opposing party are in similar positions. Both know of the rule and its requirements, and both possess similar information about the conduct and the pleadings of counsel. . . . There is no reason why prompt action should be required of an opposing party and yet not similarly required of the court.

27 F.3d at 63.

Consol filed its motion for Rule 11 sanctions in a timely fashion, consistent with *Pensiero*, and Plaintiffs do not argue to the contrary. For reasons not apparent from this record, the Rule 11 motion was initially dismissed without prejudice, and Consol renewed its Rule 11 motion after the district court granted the

22

motion to dismiss.[7] An obvious corollary to requiring parties to file their Rule 11 motion prior to final judgment, and requiring a district court imposing sanctions *sua sponte* to do so prior to or contemporaneously with final judgment, is that district courts must resolve any issues about imposition of sanctions prior to, or contemporaneously with, entering final judgment. Requiring Rule 11 motions to be filed before final

---

[7] In their brief in No. 06-3617, Consol represents that it informed the court of the need to rule on the outstanding Rule 11 motion prior to entering a final order dismissing the complaint and expressed a concern that failure to follow our supervisory rule "would jeopardize Consol's ability to recover sanctions under Rule 11 pursuant to prior decisions of the Third Circuit." Appellants' Br. at 5, n.2. For reasons not apparent on this record, the court nevertheless proceeded to enter final judgment without ever ruling on the Rule 11 motion. As we explain, the most likely result of the eventual Rule 11 ruling will be a second appeal raising issues which could have (and should have) been addressed in the appeal (or possible cross-appeal) of the order dismissing the complaint. That will require another panel of this court to revisit the merits of the underlying case - precisely the result *Pensiero* strives to avoid.

23

judgment is entered accomplishes nothing unless we are able to resolve any challenge to the grant or denial of Rule 11 sanctions when we rule on the merits of the final judgment.

Consol believes that the record supports imposition of sanctions because the district court dismissed Plaintiffs' suit on the precise grounds Consol cited in the letter Consol sent to Plaintiffs as part of the notice it served under Rule 11. Consol therefore "asks [us] to conclude that sanctions should be granted here and return the case to the District Court and/or the Magistrate Judge for a determination of the appropriate amount to be levied, or in the alternative, that [we] impose sanctions, based on the facts and law as set forth in the record." Consol Br. at 24. Although Consol's reliance on *Rooker-Feldman* certainly had merit as explained in the R and R, it is neither appropriate nor prudent for us to attempt to resolve the propriety or amount of any Rule 11 sanctions on this record.

24

As we have just explained, motions under Rule 11 must be decided in the first instance by the trial court absent extraordinary circumstances that do not appear on this record and which we cannot now imagine. Accordingly, we will remand this case to the district court to rule on Consol's Rule 11 motion.

## IV.

For the foregoing reasons, the dismissal for lack of subject-matter jurisdiction will be AFFIRMED and the case is REMANDED for a ruling by the district court on Consol's motion for Rule 11 sanctions.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

KARL E. GARY, OSCAR R. IAMS;              )
SHIRLEY J. IAMS; CHARLES W.               )
PHILLIPS; DAVID HIGGENBOTHAM,             )
JUDITH HIGGENBOTHAM; MARY ANN             ) C.A. No. 05-1438
NEELY; CHARLES AMBROSE WHITLATCH,         )
JR.; DEBORAH ANN WHITLATCH,               ) Judge David S. Cercone
WHITLATCH; DONALD WHITLATCH;              )
FRANCIS E.WHITLATCH; HENRY ABNER          ) Magistrate Judge
WHITLATCH; NORMA JEAN WHITLATCH;          ) Francis X. Caiazza
ROBERT PHILLIPS; WILLIAM H.               )
WHITLATCH; KATHY L. WHITLATCH;            )
ALFRED S. CHAMBERS AS POWER OF            )
ATTORNEY FOR GARY J. PIERSON,             )
ALFRED R. CHAMBERS, JR.;                  )
ALFRED R. CHAMBERS AS POWER OF            )
ATTORNEY FOR WINIFRED J. PIERSON;         )
PAUL R. PHILLIPS; BARBARA                 )
SWARTZMILLER; CHARLES E. WHITLATCH;)
PATRICIA WHITLATCH; NETTIE PHILLIPS)
MORRIS; EDNA PHILLIPS SCHRADER;           )
VIRGINIA KENNEDY; HELEN KELLY;            )
MARY THORNE; and KENNETH L.               )
PHILLIPS,                                 )
              Plaintiffs,                 )
                                          )
         v.                               )
                                          )
                                          )
THE BRADDOCK CEMETERY COMPANY, AND )
CONSOL ENERGY, the successor and/  )
or assign of RHEINBRAUN, U.S.      )
CORPORATION; and CNX COAL, the     )
successor and/or assign of CONSOL  )
PENNSYLVANIA COAL COMPANY;          )
                                          )
                                          )
         Defendants.               )

**REPORT AND RECOMMENDATION**

**I. Recommendation**

In this action filed pursuant to 42 U.S.C. §1983 and the

Pennsylvania and U.S. Constitutions, the Plaintiffs allege that

their rights were violated when the Defendants, "clothed with the

state's power of eminent domain," effected a taking of their support interest in land underlying cemetery plots located in Braddock Cemetery, Greene County, Pennsylvania. The Defendants' Motions to Dismiss pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) (Doc. 6) and (Doc. 20) are pending. Under the principles of the Rooker-Feldman doctrine, this court lacks subject matter jurisdiction over the Plaintiffs' claims. As a result, the Rule 12(b)(1) motions should be granted.

## II. **Factual and Procedural Background**

This case proves the axiom that "the wheels of justice grind slowly." The underlying facts, which are straightforward and largely undisputed, have occupied state courts since March 1991 when the first of four consolidated claims was filed. The court revisits these facts in order to provide context for its conclusions of law.[1]

In 1857, Mr. and Mrs. James H. Braddock conveyed to the ruling elders of the Unity Presbyterian Church an unrestricted deed to a two and one-quarter acre parcel of land in Greene County, Pennsylvania. In 1902, Braddock and his second wife, Belle, deeded to the same grantees a second parcel of land. Excluded from this second grant was a seam of coal known as the "Pittsburgh vein", which ran under a portion of the land and had previously been conveyed to another party.

In 1916, the Braddock Cemetery Company was established as a

---

[1]The facts are drawn principally from the November 5, 2001 Opinion of the Court of Common Pleas of Greene County denying the Plaintiff's motions for post-trial relief. (Doc. 16 Ex. F).

non-profit corporation. In 1920, the two parcels of land originally owned by James Burke, were conveyed by the Unity Church to the Braddock Cemetery with the stipulation that the property be used exclusively as "a cemetery and place of sepulcher for the dead." The Cemetery operated without significant incident for many years.

The seeds of this litigation were sown in 1981 when the Cemetery's directors and officers leased the Pittsburgh vein to Defendant Consol's predecessor, Conoco, Inc. Under the terms of this lease, the coal company was authorized to mine the vein via the long-wall method, without the obligation to maintain support for the land above, or to correct possible subsidence. In return, the coal company committed to repair any damage caused by the mining, including the cost of removing and reinterring remains, paying the Cemetery $70,000.00 for grounds maintenance and upkeep, and giving the Cemetery the option to purchase an adjoining tract of land for a nominal price.

Mining began in February 1991 and lasted less than two weeks. During and for about three months following the mining operation, the surface of the cemetery subsided more than three feet. This subsidence was even and not noticeable. There was no evidence of damage to grave markers, vaults, or any other part of the cemetery. The operation of the cemetery was not interrupted or altered.

Some of those who had purchased or whose relatives had purchased burial plots in the Cemetery prior to the mining

-3-

operation were unhappy with the excavation. Complaining that they had not been notified that mining could or would take place, the Plaintiffs filed suit in the Court of Common Pleas for Greene County. They challenged the Cemetery's right to execute a lease or subsidence agreement with the coal company, and alleged state law violations on the part of all defendants. Cross-motions for summary judgment were filed.

All liability issues were resolved by these summary judgment motions. The coal company was found liable for: 1) trespassing; 2) violating relevant mining laws; 3) inducing breach of contract, trust and fiduciary duty; and 4) infliction of emotional distress. The Cemetery was found to have breached a trust, a contract, and fiduciary duties. The court then held a nine day jury trial confined to the issue of damages. At the close of the evidence, the jury was instructed that damages could be calculated based on the value of the coal taken from the cemetery. Using this measure, the jury assessed damages against the coal company and the Cemetery. The Defendants' post-trial motions were denied.

An appeal followed. The Pennsylvania Superior Court determined that the jury's damage award should not have been based on the value of coal extracted, because the Plaintiffs did not own the mineral rights to their burial plots. The Court also found that the Court of Common Pleas erred in granting summary judgment in favor of the Plaintiffs on a number of claims. Accordingly, the Superior Court reversed the order of the Court

-4-

of Common Pleas, and remanded the matter for a new trial encompassing liability and damages. The Plaintiffs' application for reargument before the Superior Court,[2] their request for permission to appeal to the Supreme Court of Pennsylvania, and their motion for reconsideration of the Supreme Court decision precluding appeal were denied.

On March 13, 2000, a second trial began in the Court of Common Pleas for Greene County. After three weeks, the jury reached a verdict in favor of the Defendants. The Court, in an opinion addressing the Plaintiffs' motions for post-trial relief (Doc. 16 Ex. F), summarized the jury's reasoning as follows: "There is no loss to the plaintiffs until or unless the . . . mining of the coal and subsidence were inconsistent with the plaintiffs' use of their lots for burial purposes. The jury made no such findings." Id., at 10. The Court explained:

> The jury, after a three-week trial and after hearing that there was no visible damage to the cemetery and that the sale of lots and burials had continued up to at least the time of trial, and after hearing that no one, plaintiff or otherwise, had requested the transfer of the remains of his or her loved one to another cemetery, found that whatever

---

[2]In this application, the Plaintiffs make an argument very similar to the one advanced here: "The [Superior] Court cannot acknowledge that [Plaintiffs] own the support, that support has a value, but deny [Plaintiffs] compensation for the taking of their support." (Doc. 16 at 9). "This ruling amounts to a state sanctioned taking by coal companies of all support estates in this Commonwealth in violation of the Due Process Clause of the United States and Pennsylvania Constitutions." Id. at 10 (footnote omitted). The Plaintiffs mischaracterize the Superior Court's position. The Superior Court found that the Plaintiffs held "an easement for burial purposes and nothing more." Id. at 16. Their support interest did not extend beyond what was necessary to avoid interference with that easement. Id.

-5-

> subsidence had occurred did not interfere with
> the reasonable and proper enjoyment of the
> lots as burial sites.

Id. at 9

Following the Court's denial of post-trial relief, the Plaintiffs filed a second appeal, raising seventeen issues, with the Superior Court of Pennsylvania. In the appellate brief (Doc. 16 Ex. G), the Plaintiffs again raised the constitutional issue which was considered by the Court of Common Pleas and is the focus of the federal complaint: "[I]f the jury's verdict were to stand as a result of the trial court's denial of [the Plaintiffs'] post-trial motions, then the trial court will have effected a de facto condemnation of [the Plaintiffs'] support estate, entitling [them] to just compensation under the Fifth Amendment." Id. at 18. The Superior Court addressed this argument as it did in the first appeal, writing: [T]he cemetery lot owners had easements and the right of support and left to the jury the task of determining whether the mining interfered with the . . . easements, i.e. whether [Plaintiffs] suffered damages from the loss of support." (Doc. 4-1 at 11). Because the jury in the second trial concluded that their interest in the land was not damaged, the Plaintiffs were not entitled to compensation.

The Superior Court affirmed the order of the Court of Common Pleas and refused to reconsider its ruling. The Supreme Court of Pennsylvania declined to hear the Plaintiff's appeal, and it, too, refused to reconsider its decision. The federal complaint, filed on October 15, 2005, followed.

-6-

### III. **Discussion**

#### A. **The Federal Complaint**

_____The claims set out in the federal complaint were raised and resolved in the state court proceedings.[3] The Plaintiffs justify their attempt to relitigate these arguments by contending that when the Supreme Court of Pennsylvania denied their petition for reconsideration, it "clothed the Defendants under color of state law with the authority to take private property without just compensation." (Doc. 1 ¶ 64). In order for the court to accept this theory, it would be required to re-examine and reject the state courts' decision that the Plaintiffs were not deprived of any property interest in the Braddock Cemetery plots. The court lacks jurisdiction to undertake this re-examination.

#### B. **The Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine provides that "federal courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding." Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992 (alteration in original). The doctrine, in essence, prohibits federal courts from exercising jurisdiction over cases that are "the functional equivalent of an appeal from a state court judgment." Marran v. Marran, 376 F.3d 143,149 (3d. Cir.

---

[3]The court notes that the names of the plaintiffs in the state and federal actions do not overlap precisely. Neither party argues that the outcome of the pending motions turns on the identity of the plaintiffs, or that the federal plaintiffs were not in privity with the state court plaintiffs.

2004)(citing <u>Rooker</u> <u>v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia</u> <u>Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983)). This functional equivalence exists in two circumstances: 1) where the claim raised in federal court was actually litigated in state court; or 2) where the federal claim is inextricably intertwined with the state adjudication. In this case, functional equivalence exists under either test.

This court has cited portions of the record in the state proceedings which demonstrate that the Plaintiffs' constitutional claims were raised and considered. It is clear that the state courts resolved these claims in favor of the Defendants, finding that there was no cognizable interference with any of the Plaintiffs' property interests.

Even had the constitutional claims not been raised explicitly in the state proceedings, the result under the <u>Rooker-Feldman</u> doctrine would be the same; this court lacks jurisdiction because the state and federal claims are inextricably intertwined. Under <u>Rooker-Feldman</u>, a federal court lacks subject matter jurisdiction when, in order to grant the relief sought, the federal court must conclude that the state court's judgment in a prior proceeding was entered in error, or "must take action that would render the state judgment ineffectual." <u>Maran</u>, 376 F.3d at 150 (quoting <u>FOCUS v. Allegheny County Court of Common Pleas</u>, 75 F.3d 834, 840 (3d Cir. 1996)). The claims raised in this court fall squarely within the parameters of <u>Rooker-Feldman</u>.

In both state and federal court, the Plaintiffs have alleged

-8-

an unconstitutional taking of property. The Superior Court of

Pennsylvania, in the course of the second state court appeal,

held that there was no taking. In order for this court to find

for the Plaintiffs, it would have to conclude that they <u>were</u>

deprived of a property right,[4] a finding which would directly

contradict the state court's holding. Consequently, pursuant to

the <u>Rooker-Feldman</u> doctrine, this court lacks subject matter

jurisdiction over each of the Plaintiffs' claims.[5]

## III. **Conclusion**

Because the <u>Rooker-Feldman</u> doctrine establishes that the

court lacks subject matter jurisdiction over claims raised in the

complaint, the Defendants' Motions to Dismiss pursuant to Fed. R.

---

[4]In order to state a constitutional claim under Section 1983, a plaintiff must establish an underlying constitutional violation. <u>Curley v. Clem</u>, 298 F.3d 271, 277(3d Cir. 2002). The Plaintiffs have failed to make this threshold showing. Even had the Plaintiffs established that they were deprived of a constitutional right, they could not proceed under Section 1983 because the deprivation did not involve state action. The argument that a state court judgment can transform private actors into state actors by "clothing them with the power of eminent domain" is entirely without support. The state claim fares no better. The prevailing view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution. <u>Farrell v. County of Montgomery</u>, Civ. No. 0593, 2006 WL 166519 at * 1 (E.D. Pa. Jan. 18, 2006). Had this complaint not been subject to dismissal under Fed. R. Civ. P. 12(b)(1), it would have been dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

[5]The Plaintiffs seek to avoid the impact of the <u>Rooker-Feldman</u> doctrine by arguing that they do not seek to overturn the state court judgment, but, instead, seek to enforce it. According to the Plaintiffs, the Superior Court held that the Plaintiffs owned the support interest in burial plots, that they were deprived of that interest by the actions of the Defendants, and that the state court decisions authorized this taking of property without compensation. This argument, as this court has explained, mischaracterizes the Superior Court's holding.

Civ. P. 12(b)(1) (Doc. 6) and (Doc. 20) should be granted.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b) (1)(B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 19, 2006. Responses to objections are due by June 15, 2006.


May 17, 2006


                                    S/ Francis X. Caiazza
                                    Francis X. Caiazza
                                    U.S. Magistrate Judge



cc:

Louis M. Tarasi, Jr., Esq.
C. William Kenny, Esq.
Tarasi, Tarasi & Fishman, P.C.
510 Third Ave.
Pittsburgh, PA 15219

Roger L. Puz, Esq.
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222

Jerri Ryan Kent, Esq.
Joseph A. Katarincic, Esq.
Thorp, Reed & Armstrong
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219