J-A21024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMOND ZAYAS | |
| Appellant | No. 2519 EDA 2014 |

Appeal from the PCRA Order August 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1001661-2004
CP-51-CR-1001671-2004

BEFORE: ALLEN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.: **FILED AUGUST 18, 2015**

Appellant, Raymond Zayas, appeals from the August 1, 2014 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

The PCRA court summarized the relevant factual history of this case as follows.

> During [2003], during the afternoon hours, Appellant was the sole caretaker of the female complainant, (hereinafter "S.Z."), and the male complainant, (hereinafter "J.Z."), while their mother was at work. At this time, Appellant was twenty-eight (28) years old, S.Z. was six (6) years old and J.Z. was between (3) and four (4) years old. Both S.Z. and J.Z. are Appellant's biological children.

---

[*] Former Justice specially assigned to the Superior Court.

On one occasion, Appellant entered S.Z.'s bedroom wearing boxers. He knelt on the floor behind S.Z., who was also in a kneeling position, pulled down her pants, and inserted his penis inside of her anus. He, then, sat on the bed, and sat S.Z. on his lap with each leg dangling to the sides of his legs, and inserted his penis inside of her vagina. After this incident, S.Z. was in pain and her backside hurt.

On another occasion, while S.Z. was in her mother's bedroom watching the cartoon show Barney, Appellant entered the room wearing his boxers and a T-shirt. Appellant then pulled up his shirt and inserted his penis inside of S.Z.'s vagina and butt. Then, Appellant ejaculated and forced S.Z. to lick and swallow his semen. He also forced her to suck his penis. Afterwards, S.Z. went to use the bathroom and she saw blood after wiping her vagina.

On other occasions, when no one else was home, Appellant would watch pornographic movies with S.Z. S.Z. said that these sexual acts happened more than twice, but she was unsure of the exact number of occurrences. Occasionally, before having sexual intercourse with S.Z., Appellant would use baby oil or cooking oil to lubricate his penis. On another occasion, S.Z. was in her bedroom, when she heard her little brother, J.Z., screaming from the bathroom. Through a crack in the bathroom door, S.Z. saw her father, … [A]ppellant, inserted [sic] his penis inside J.Z.'s butt.

The medical report stated that S.Z. had a very thin hymenal rim with a bump at 6:00. The thin rim of the hymenal tissue was due to constant penetration. Penetration, whether it was a penis, very large fingers, or dildo was the only act that caused such a thin rim of hymenal tissue of S.Z.'s vagina. S.Z. also had anal fissures or anal tears, which were consistent with penetration by an adult male penis. As for J.Z., he had a healed scar at the top of his anus near his testicles, which was caused by penetration of an adult male penis. When J.Z.

> was in a downward knee-chest position, for his medical exam, his anus dilated after only several seconds, which was an indication of sexual abuse because dilation generally occurred after thirty (30) seconds.

PCRA Court Opinion, 12/23/14, at 2-4.

On February 24, 2006, a jury found Appellant guilty of one count of rape and two counts each of involuntary deviate sexual intercourse, incest, corruption of minors, and endangering the welfare of a child.[1] On January 19, 2007, the trial court imposed an aggregate sentence of 31 to 62 years' imprisonment. Prior to sentencing, the trial court determined that Appellant met the criteria of a sexually violent predator (SVP) under Megan's Law, 42 Pa.C.S.A. §§ 9791-9799.9.[2] Appellant filed a notice of appeal, and this Court affirmed the judgment of sentence on March 8, 2010, and our Supreme Court denied Appellant's petition for *allocatur* on June 29, 2010. ***Commonwealth v. Zayas***, 996 A.2d 560 (Pa. Super. 2010), *appeal denied*, 997 A.2d 1178 (Pa. 2010).

On April 11, 2011, Appellant filed the instant timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition on March 27, 2012. The Commonwealth filed a motion to dismiss on

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 4302, 6301(a) and 4304, respectively.

[2] Although this was the statute in effect at the time of Appellant's SVP hearing, it expired on December 20, 2012. A new version went into effect the same day. ***See*** 42 Pa.C.S.A. §§ 9799.10 – 9799.40.

February 26, 2014. The PCRA court entered an order on August 1, 2014 denying Appellant's PCRA petition without a hearing.[3] On August 27, 2014, Appellant filed a timely notice of appeal.[4]

On appeal, Appellant presents the following two issues for our review.

> I. Whether the [PCRA court] was in error in denying … Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness[?]
>
> II. Whether the [PCRA court] was in error in not granting relief on the PCRA petition alleging counsel was ineffective[?]

Appellant's Brief at 8.

We begin by noting our well-settled standard of review. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v.*

---

[3] Although the PCRA court did not enter an order giving Appellant notice of its intent to deny his petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907, Appellant has not challenged this on appeal.

[4] The PCRA court did not direct Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The PCRA court filed its Rule 1925(a) opinion on December 23, 2014.

***Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." ***Commonwealth v. Robinson***, 82 A.3d 998, 1013 (Pa. 2013) (citation omitted). However, this Court reviews the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014) (citation omitted).

The Sixth Amendment to the Federal Constitution provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence."[5] U.S. Const. amend. VI. The Supreme Court has long held that the Counsel Clause includes the right to the effective assistance of counsel. ***See generally Strickland v. Washington***, 466 U.S. 668, 686 (1984); ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987).

In analyzing claims of ineffective assistance of counsel, "[c]ounsel is presumed effective, and [appellant] bears the burden of proving otherwise." ***Fears***, ***supra*** at 804 (brackets in original; citation omitted). To prevail on any claim of ineffective assistance of counsel, a PCRA petitioner must allege and prove "(1) the underlying legal claim was of arguable merit; (2) counsel

---

[5] Likewise, Article I, Section 9 of the Pennsylvania Constitution states in relevant part, "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel …." Pa. Const. art. I, § 9. Our Supreme Court has held that the Pennsylvania Constitution does not provide greater protection than the Sixth Amendment. ***Pierce***, ***supra*** at 976.

had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different." ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs." ***Commonwealth v. Elliott***, 80 A.3d 415, 427 (Pa. 2013) (citation omitted), *cert. denied*, ***Elliott v. Pennsylvania***, 135 S. Ct. 50 (2014).

We also note that a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion. ***Commonwealth v. Roney***, 79 A.3d 595, 604 (Pa. 2013) (citation omitted), *cert. denied*, ***Roney v. Pennsylvania***, 135 S. Ct. 56 (2014).

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (internal citations omitted). "[A]n evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some

speculative claim of ineffectiveness." ***Roney***, ***supra*** at 605 (citation omitted). Therefore, in order to determine whether the trial court properly denied Appellant's petition without a hearing, we must first examine the issues raised in his PCRA petition. Accordingly, we elect to address Appellant's issues in reverse order for ease of disposition.

Appellant's second issue essentially is divided into five sub-issues claiming various bases upon which trial and direct appeal counsel were ineffective. First, Appellant argues that trial counsel was ineffective for advising Appellant to waive his right to testify. Appellant's Brief at 16. The Commonwealth counters that trial counsel could not have been ineffective in this regard, in part because Appellant "knowingly and voluntarily waived his right to testify during an oral colloquy with the trial court." Commonwealth's Brief at 10.

Our Supreme Court has previously explained an appellant's burden on such a claim as follows.

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

***Commonwealth v. Nieves***, 746 A.2d 1102, 1104 (Pa. 2000) (internal citations omitted); ***accord Commonwealth v. Michaud***, 70 A.3d 862, 869 (Pa. Super. 2013).

In the case *sub judice*, Appellant acknowledges that the trial court conducted a colloquy with him on the record concerning his decision not to testify in his own defense. Appellant's Brief at 16; ***see also generally*** N.T., 2/23/07, at 78-80. Nevertheless, Appellant avers that "counsel gave specific advise [sic] so unreasonable as to vitiate a knowing and intelligent decision not to testify." Appellant's Brief at 17. However, Appellant's brief does not state what the "specific" advice was that counsel gave him. Because Appellant does not allege what counsel's erroneous advice was, he cannot show that his claim has arguable merit. As a result, Appellant's first sub-issue fails. ***See Simpson***, ***supra***; ***Nieves***, ***supra***.

Appellant's next two sub-issues pertain to the effectiveness of direct appeal counsel. In his second sub-issue, Appellant argues that direct appeal counsel was ineffective for not raising the issue on direct appeal as to whether Appellant received "a harsh and unreasonable sentence." Appellant's Brief at 18. In his third sub-issue, Appellant argues direct appeal counsel was ineffective for not raising the issue as to whether the trial court

abused its discretion when it admitted certain statements of J.Z. under the Tender Years exception.[6]

The Supreme Court has consistently noted that a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." **Jones v. Barnes**, 463 U.S. 745, 751 (1983). "Counsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief." **Commonwealth v. Jones**, 815 A.2d 598, 613 (Pa. 2002). It is this process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, [that] is the hallmark of effective appellate advocacy." **Id.** at 614 (internal quotation marks and citation omitted).[7]

Turning to Appellant's second sub-issue pertaining to sentencing, as noted above, Appellant argues that direct appeal counsel should have raised the issue that Appellant's sentence was "harsh and unreasonable."

---

[6] 42 Pa.C.S.A. § 5985.1.

[7] This Court has, on more than one occasion, quoted from Judge Aldisert who sat on the United States Court of Appeals for the Third Circuit, stating that "[a]ppellate advocacy is measured by effectiveness, not loquaciousness." **Gary v. Braddock Cemetery**, 517 F.3d 195, 199 n.1 (3d Cir. 2008) (citation omitted).

Appellant's Brief at 18.  As this claim pertains to the discretionary aspects of Appellant's sentence, he was not automatically entitled to appellate review of this claim, as in Pennsylvania, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." ***Commonwealth v. Tobin***, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014).  Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

***Id.***  It is axiomatic that a bald claim of harshness or excessiveness does not present a substantial question for our review.[8] ***See Commonwealth v. Fisher***, 47 A.3d 155, 159 (Pa. Super. 2012) (concluding that Fisher's "bald assertion that [his] sentence was excessive … d[id] not present a substantial

---

[8] We note that trial counsel raised this issue in Appellant's post-sentence motion.  Appellant's Post-Sentence Motion, 1/29/07, at ¶ 3.

question[]"), *appeal denied*, 62 A.3d 378 (Pa. 2013). As Appellant has not shown that he would have raised a substantial question on direct appeal, direct appeal counsel cannot be held ineffective for not raising this issue.

Turning to the tender years issue, Appellant avers in a conclusory fashion that this claim has arguable merit because "[t]rial counsel obviously thought th[is] issue[] had merit." Appellant's Brief at 18. Appellant does not explain how the trial court abused its discretion in admitting the testimony. It is axiomatic that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted), *appeal denied*, 29 A.3d 796 (Pa. 2011). Also, this Court will not consider an argument where an appellant fails to cite to any legal authority or otherwise develop the issue. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009), *cert. denied*, ***Johnson v. Pennsylvania***, 562 U.S. 906 (2010). Therefore, we deem this argument waived for lack of development.

In his fourth sub-issue, Appellant avers that trial counsel was ineffective for not presenting certain testimony at trial and not adequately investigating an alibi defense. Appellant's Brief at 19. Specifically, Appellant contends that trial counsel should have investigated the victims' mother's motive for allegedly persuading the victims to bring false charges against him. Appellant and the victims' mother had an argument pertaining to her allegedly forging some of his workman's compensation checks while he was

incarcerated, and Appellant threatened to bring legal action against her. *Id.* Appellant further argues that trial counsel should have investigated an alibi defense, specifically, that at the time of the offenses, he was incarcerated. *Id.* Appellant also argues that the children were in daycare at the time the incidents occurred. *Id.*

We note that generally, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Taking each claim in turn, we note that trial counsel cross-examined the victims' mother regarding her alleged motives for coaching the victims to make up false charges. N.T., 2/22/06, at 180-184. Trial counsel also cross-examined the victims' mother on Appellant's incarceration, through which it was established that he was incarcerated until March 19, 2003, but lived with the family until July 15, 2003, and the events occurred sometime between January 2003 and January 2004. *Id.* at 155-156.

Finally, Appellant argues that trial counsel was ineffective for not investigating the "alibi" defense that the children were in daycare when the offenses took place. Appellant's Brief at 19. Initially, we agree with the Commonwealth that this is not an alibi defense, but rather a defense of third-party guilt, *i.e.*, that someone at the daycare committed the offenses. *See generally* Commonwealth's Brief at 18. Appellant does not allege that any evidence or witnesses exist suggesting that the offenses occurred at a

daycare facility. Based on these considerations, Appellant is not entitled to relief on this issue.

In his fifth sub-issue, Appellant argues that trial counsel was ineffective for alleging in his post-sentence motion that the trial court's decision to designate him an SVP was against the weight of the evidence, which resulted in waiver on direct appeal. *Zayas*, *supra* at 7 n.3. Specifically, Appellant contends that the Commonwealth's expert merely relied on "his clinical judgment[]" and therefore did not prove that Appellant was likely to engage in predatory sexual conduct in the future. Appellant's Brief at 21.

Under Megan's Law, an SVP is defined as "a person who has been convicted of a sexually violent offense […] and who is determined to be a sexually violent predator under section 9795.4 […] due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." *Commonwealth v. Martz*, 926 A.2d 514, 522 (Pa. Super. 2007), *appeal denied*, 940 A.2d 363 (Pa. 2008); *see also* 42 Pa.C.S.A. § 9792. When a person is convicted of one or more offenses set forth in section 9795.1, the trial court must order that an SVP assessment be performed by the Pennsylvania Sexual Offenders Assessment Board (SOAB), which is comprised, of "psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders." 42 Pa.C.S.A. § 9795.4; *see*

*also Commonwealth v. Dixon*, 907 A.2d 533, 535 (Pa. Super. 2006),

*appeal denied*, 920 A.2d 830 (Pa. 2007).  Once an assessment is ordered, a

SOAB member is chosen to perform the assessment and determine whether

the offender fits the definition of an SVP as defined by the statute.  *Dixon*,

*supra* at 536.  Using the SOAB member's assessment and other evidence,

the Commonwealth must prove to the trial court that the offender is an SVP

by clear and convincing evidence.  *Dixon*, *supra* (citation omitted).  The

trial court makes the ultimate determination.[9]  *Id.*

In the case *sub judice*, on direct appeal, this Court rejected the same

argument regarding the sufficiency of the evidence that Appellant now

makes in the instant appeal regarding the weight of the evidence.

> In its 1925(a) opinion, the trial court stated
> the following with regard to its conclusion that Zayas
> was likely to re-offend:
>
>> [Zayas]    also    maintains    that    the
>> Commonwealth expert did not prove by clear
>> and convincing evidence that [he] was likely to
>> engage in future predatory sexual violence. In
>> assessing [Zayas] for SVP status, Dr. Zakireh
>> used … [the] Static 99 and theory assessment,
>> while Dr. Foley only used the Static 99.  Dr.
>> Zakireh also used the factors provided under
>> section 9795.4 in determining that [Zayas]
>> was likely to re-offend.  For instance, Dr.
>> Zakireh opined that [Zayas'] willingness to
>> sexually violate his own biological pre-
>> pubescent children was indicative of his sexual

---

[9] Again, we utilize the state of the law as it was at the time of Appellant's
original SVP hearing.

deviance and made appellant at risk for re-offending. In reviewing [Zayas'] prior offense history, Dr. Zakireh also determined that he repeatedly violated the law, which showed a lack of remorse and empathy and features of anti-social behavior. Therefore, Dr. Zakireh testified that [Zayas'] diagnosis of pedophilia combined with some features of anti[-]social behavior made it likely that [he] would engage in future sexually violent offenses. Moreover, Dr. Zakireh opined that generally person's [sic] who sexually violate males were twice as likely to commit future sexually violent acts.

Trial Court Opinion, 4/23/09, at 9.

The record supports the trial court's determination. Dr. Zakireh testified that he is a member of the SOAB and that he was assigned to determine whether Zayas is an SVP. N.T., 1/19/07, at 9. In order to make this determination, Dr. Zakireh reviewed police reports, interviews with the victims, and transcripts from Zayas' preliminary hearing and trial. *Id.* He further testified that Zayas suffers from pedophilia, and that pedophilia is a mental abnormality associated with a high risk of recidivism. *Id.* at 13-14, 73. In his testimony, as in his report (which was offered into evidence), Dr. Zakireh identified each risk factor set forth in 42 Pa.C.S.A. § 9795.4(b) and addressed how, and to what extent, each applied to Zayas. *Id.* at 16-25; SOAB Report, 5/18/06, at 5-9. Dr. Zakireh also testified that Zayas exhibits significant anti-social behaviors normally associated with anti-social personality disorder, and that these features increase Zayas' likelihood of reoffending. N.T., 1/19/07, at 13-14, 25-26. Specifically, Dr. Zakireh opined that the two biggest factors associated with sexual recidivism are sexual deviance and an anti-social orientation, and that both of these factors were present in Zayas' case. *Id.* at 25.

*Zayas*, *supra* at 5-6.

- 15 -

As noted above, Appellant's argument is that Dr. Zakireh only purported to use the Static 99 assessment, but rather just used his own professional judgment. Appellant's Brief at 21. This Court quoted with approval the trial court's finding that Dr. Zakireh utilized more than his professional judgment. *See Zayas*, *supra* at 5-6. He utilized Static 99 and other factors from the record to arrive at his conclusion. Based on these considerations we conclude that Appellant's issue lacks arguable merit, and therefore, he is not entitled to relief on this issue.

Turning now to Appellant's first issue on appeal, he argues that the PCRA court abused its discretion in not conducting an evidentiary hearing. Appellant's Brief at 14. As previously noted, the PCRA court need not conduct an evidentiary hearing if there is no arguable merit to any of the claims raised in a PCRA petition. *Wah*, *supra*. Accordingly, because we have concluded that all of Appellant's issues lack arguable merit, we further conclude that the PCRA court did not abuse its discretion in not holding an evidentiary hearing. *See Roney*, *supra*.

Based on the foregoing, we conclude all of Appellant's issues on appeal are devoid of merit. Accordingly, the PCRA court's August 1, 2014 order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/18/2015