

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-2008

# In Re: Schaefer Salt

Precedential or Non-Precedential: Precedential

Docket No. 06-4574

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re: Schaefer Salt " (2008). *2008 Decisions.* Paper 454.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/454

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4574

_____

IN RE: SCHAEFER SALT RECOVERY, INC.,
Debtor

CAROL SEGAL,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 05-cv-05484)
District Judge:  The Honorable Katharine S. Hayden

_____

Argued:  June 25, 2008

_____

Before: SLOVITER, BARRY and ROTH, <u>Circuit Judges</u>

(Opinion Filed: September 9, 2008)

_____

Stephen V. Falanga, Esq. (Argued)
Connell Foley
85 Livingston Avenue
Roseland, NJ 07068-0000

<u>Counsel for Appellant</u>

Nicholas Khoudary, Esq. (Argued)
700 Route 18
East Brunswick, NJ 08816-0000

<u>Counsel for Appellees</u>

OPINION OF THE COURT

BARRY, <u>Circuit Judge</u>

A distinguished judge of the United States Bankruptcy Court for the District of New Jersey found that petitions filed *seriatim* under Chapter 11 and Chapter 7 of the Bankruptcy Code, and quickly dismissed, were filed in bad faith in a blatant abuse of the Bankruptcy Code and the Bankruptcy Court. Refusing to allow the Court "to be used as a litigation tool," sanctions were imposed under 28 U.S.C. § 1927 on a finding that the "reprehensible" conduct of counsel fell well within that statute by having multiplied the proceedings unreasonably and vexatiously.

We will shortly turn our attention to the specific conduct which led to the imposition of sanctions, and simply note at this juncture that any suggestion that sanctions were not warranted or should not have been awarded would be absurd. The question before us, however, is not as simple as whether sanctions were in order; rather, the question before us is this: did the Bankruptcy Court err when it reversed itself after it came to believe that we would invalidate the award under our "*Pensiero* supervisory rule"—and more about that later —because the motion seeking sanctions was not filed until after the entry of final judgment. Although convinced that sanctions were warranted, the Bankruptcy Court "regretfully" vacated the award, and the District Court affirmed.

We have not in a precedential opinion addressed certain of the issues the Bankruptcy Court and the District Court so thoughtfully addressed. Because we have not done so, it is not surprising that those Courts did not accurately predict what we would do. We will vacate the order of the District Court and remand for further proceedings.

## I.

On May 12, 2004, a mere eight days after it was formally

2

incorporated as a business entity, appellee Schaefer Salt Recovery, Inc. ("SSR") filed a bare bones petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. SSR's only assets were mortgages on three properties as to which tax lien foreclosure actions brought by appellant Carol Segal ("Segal") were pending in the Superior Court of New Jersey. SSR's Vice President and counsel, appellee Nicholas Khoudary ("Khoudary"), advised Segal's counsel that the foreclosure actions were stayed as a result of the filing and concomitantly filed Notices of Bankruptcy Filing in Segal's foreclosure actions. Presumably the automatic stay was one of the reasons why Khoudary advised Segal's counsel that "Segal was skunked." (A.111.)

On June 10, 2004, Segal moved to dismiss the Chapter 11 petition for cause pursuant to 11 U.S.C. §§ 1112(b) and 105(a), arguing that the petition had been filed for the sole purpose of frustrating Segal's efforts to conclude the pending foreclosure actions. By order dated July 6, 2004, the Bankruptcy Court granted the motion, dismissing the petition on a finding that it had been filed in bad faith, but striking language in the proposed order that would have barred SSR from filing another petition for one hundred and eighty days.

Following the dismissal, the foreclosure actions were reinstated in the Superior Court. On August 13, 2004, in response to what Segal describes as "this latest stalling tactic," (Br. at 8), the Superior Court granted Segal's motion to strike SSR's answers, finding that they set forth no genuine issue of material fact and no legally sufficient defense, and ordered the foreclosure actions to go forward as uncontested matters. That same day, SSR filed a new petition in the Bankruptcy Court, this time pursuant to Chapter 7, for no apparent reason other than to cause the automatic stay to again kick in.

On August 7, 2004, Segal filed a motion to dismiss the Chapter 7 petition for cause pursuant to 11 U.S.C. §§ 707(a) and 105(a). In support of his motion for a short return date, Segal argued that SSR had no creditors and no assets other than the purported mortgages, and that this latest filing was nothing more than a transparent litigation strategy to delay the foreclosure actions then scheduled to take place in three days.

3

A hearing date was set for August 24, 2004.  On that date, Khoudary advised the Bankruptcy Court that SSR consented to the dismissal of the Chapter 7 petition and that he saw no need to appear.  The Court placed its ruling on the record in the presence of Segal's counsel.

> [We] received some calls from Mr. Khoudary indicating that he would voluntarily dismiss the bankruptcy proceeding due to his health and so on, that he couldn't be here.  Now I have no problem accepting that offer, with this proviso in light of the dismissal of the case by the Court . . . [not] quite eight weeks ago[.]
>
> [I]n  light of the timing of the most recent filing, I am going to do a court order which dismisses the case and imposes [a] 180 day bar on the filing of any petition under any chapter of the Bankruptcy Code.  I found the last filing to be a bad faith filing.  I warned the parties and indeed I indicated I expected that knowing the Court's position . . . Mr. Khoudary well knew the law [and] would not be so foolish as to file a case that did not meet the requirements of a good faith filing despite – and so I struck the 180 day bar order language in the prior order while the old adage, fool me once, shame on you, fool me twice, shame on me, is that to be put into effect here.  I'll take a voluntary dismissal, I'll reflect that in my order that I'm imposing [a] 180 day bar order.  I will not allow this bankruptcy court to be used as a litigation tool by a party who in truth has not so much a reorganizational intent, but intends to use the bankruptcy court as an offensive weapon.  That kind of use, frankly, offends not only the Court but the Bankruptcy Code.

(A.42-43.)  The Court promptly entered an order granting the motion to dismiss, noting that SSR "consents to dismissal," and prohibiting SSR from filing another petition under the Bankruptcy Code for one hundred and eighty days.  (A.145-46.)

Nine days later, on September 2, 2004, Segal moved under

4

Rule 9011 of the Federal Rules of Bankruptcy Procedure and the Court's inherent power for costs and attorneys' fees against SSR and Khoudary for filing successive, frivolous bankruptcy petitions. On September 27, 2004, the Court heard argument, and concluded that although it had "some question as to whether [Rule] 9011 applie[d] . . ." given that "the matter is already adjudicated," (A.51), that did not end the matter.

> [W]hat frustrates me about this case is on its face, in my view, both the 11 filing and most particularly the 7 filing were, in fact, abuse of the bankruptcy process.
>
> Bankruptcy – use of bankruptcy petition is a proper defensive weapon both for a debtor to preserve an asset and to insure payment to creditors. It's not an offensive weapon, and in both instances that's what Schaefer Salt Recovery did. Let us not forget that Schaefer Salt Recovery was rapidly created to hold this mortgage, filed the first 11 without the benefit of counsel, notwithstanding it's a corporation, and indeed filed this second filing. It's not clear to me whether you, Mr. Khoudary, was [sic] acting as the counsel for your own corporation or not, but it strikes me that this falls well within the purview of the statute dealing with vexatious litigation where the filings are designed and do, in fact, unreasonably multiply litigation that has resulted not only in the consumption of Bankruptcy Court resources but a back and forth in the State Court.

(A.51-52.) The Court, therefore, awarded attorneys' fees and costs against Khoudary under 28 U.S.C. § 1927, but only for the "unnecessary return trip to Bankruptcy Court in the context of the Chapter 7" because the Court did not believe that the statute would cover the earlier filing. (A.52.) The Court directed counsel for Segal to submit a certification of fees and costs, and counsel did so, but the certification inexplicably fell through the cracks and an order granting sanctions in a specific amount was not entered.

5

By opinion and order dated August 24, 2005, the Bankruptcy Court reversed the award of sanctions, having determined, after further review, that the request for sanctions was first made after the entry of final judgment and thus was untimely under the supervisory rule we adopted in *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988), for violations of Rule 11 of the Federal Rules of Civil Procedure. The Bankruptcy Court, relying on a not-precedential opinion of this Court which held that the *Pensiero* supervisory rule applies to bankruptcy court proceedings even where a de minimis period of time had elapsed after final judgment, found that the supervisory rule was a bright line rule from which deviation—here, nine days after final judgment, i.e., the second dismissal—is not appropriate.[1] The Bankruptcy Court concluded that it "would be reasonable to expect" us to view sanctions under § 1927 in the same manner as we viewed Rule 11 sanctions and sanctions under a court's inherent power.

Segal moved for reconsideration, a motion the Bankruptcy Court "regretfully" denied. The Court explained:

> [B]elieve me, Schaefer Salt and the attorney, Mr. Khoudary richly deserved a sanction, the problem is, the timing with which it was done . . . I wasn't thinking, frankly, when I awarded sanctions as to whether I was within the scope of my authority to do so, because frankly I was so aggravated at the blatant, blatant misuse of the bankruptcy code, that I didn't think about the fact that as I put it before, that I don't have this unlimited equity wand.
>
> . . . .

---

[1] *Piscitelli v. Mirow* (*In re Nicola*), 65 Fed. Appx. 759, 762-63 (3d Cir. 2003). We do not regard that opinion as precedent that binds us and will not cite it as authority. Third Circuit Internal Operating Procedure 5.7. It follows, therefore, that we reject appellees' argument that that case "controls" the issue of whether the supervisory rule applies to proceedings in the bankruptcy court. (Appellees' Br. at 19.)

. . . [I]t was not a voluntary dismissal. The matter came on in front of me on a shorten time motion to dismiss brought by your client. The hearing that I held was based on the motion by your client. Perhaps – I can't even imagine what led Mr. Khoudary to finally in his skirmishing, file this letter voluntarily withdrawing the Schaefer Salt bankruptcy. It doesn't matter what he was thinking. The Court held a hearing on the motion of Mr. Siegel [sic], the Court issued an order based on Mr. Siegel's [sic] motion. That's the Court order . . . I'm not free to ignore . . . Third Circuit case law. Believe me, I would like to ignore it. I find, frankly, the conduct and I'm looking directly at Mr. Khoudary to be unprofessional and particularly inappropriate for someone who is not unfamiliar with bankruptcy practice. At a minimum, I think probably a couple of RPCs were violated, which I probably should have noted for the appropriate parties, but in light of the Third Circuit's supervisory rule, I can't issue the sanctions. I wish I could.

(A.58-59.)

Segal appealed both the denial of the motion for sanctions and the denial of the motion for reconsideration to the District Court. The District Court concluded that although we had not yet extended the supervisory rule to sanctions under Bankruptcy Rule 9011 or 28 U.S.C. § 1927, it saw no reason why Rule 9011 and § 1927 sanctions should be treated differently than sanctions under Rule 11 and a court's inherent power. Accordingly, the District Court affirmed the orders of the Bankruptcy Court, carefully explaining why.[2]

---

[2] The District Court, as had the Bankruptcy Court before it, rejected Segal's argument that the Chapter 7 petition had been voluntarily dismissed, finding, instead, that Segal's motion to dismiss had been granted and that, therefore, application of the supervisory rule was required. It appears that, rightly or wrongly, the Bankruptcy Court believed that with a voluntary dismissal of

7

We applaud the careful consideration given this case by the Bankruptcy Court and the District Court, and turn to the issues before us. In determining whether the District Court erred in its disposition of Segal's appeal from the Bankruptcy Court, we review the Bankruptcy Court's orders applying the standard it was appropriate for the District Court to apply. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981). Because the Bankruptcy Court's denial of sanctions and denial of Segal's motion for reconsideration were based on statutory interpretation and legal analysis only, our review is plenary.

## II.

The purpose of Rule 11 is to deter litigation abuse that is the result of a particular "pleading, written motion, or other paper" and, thus, streamline litigation. In *Pensiero*, "concerned with the appropriate time for the filing and disposition of [Fed. R. Civ. P. 11] motions," we crafted a supervisory rule that "all motions requesting Rule 11 sanctions [must] be filed in the district court before the entry of a final judgment" where such motions arise out of conduct that occurred prior to the final judgment. 847 F.2d at 98, 100. The district court had granted summary judgment to the defendant and the case was on appeal. While the appeal was pending, the defendant moved for sanctions against the plaintiff under Rule 11, and the district court granted the motion. On plaintiff's appeal of the award of sanctions, we reversed, concluding that, in the context of Rule 11 sanctions, a supervisory rule was justified to eliminate piecemeal appeals and to deter further violations of Rule 11 later in that proceeding. We have since extended *Pensiero* to a district court's *sua sponte* imposition of sanctions, concluding that the court "should decide the issue prior to or concurrent with its disposition of the case on the merits," *Simmerman v. Corino*, 27 F.3d 58, 60 (3d Cir. 1994), and to sanctions awarded under a court's inherent power, *Prosser v.*

_____

the Chapter 7 petition, it would have been unable to enter an order barring the filing of another petition for one hundred and eighty days, a bar the Court was convinced was appropriate given the facts. (A.46.)

8

*Pro*sser, 186 F.3d 403, 406 (3d Cir. 1999).[3]  In *Simmerman*, the sanction we invalidated was imposed three months after entry of the final order; in *Prosser*, the sanction we invalidated was imposed more than thirty months after the final order.  Most recently, albeit *in dicta*, we observed that "[a]n obvious corollary" to requiring parties to file their Rule 11 motion prior to final judgment and requiring district courts when imposing sanctions *sua sponte* to do so prior to or contemporaneously with final judgment "is that district courts must resolve any issues about imposition of sanctions prior to, or contemporaneously with, entering final judgment."  *Gary v. Braddock Cemetery*, 517 F.3d 195, 202 (3d Cir. 2008).  In accordance with the *Pensiero* line of cases, district courts and bankruptcy courts have been applying, with some regularity, the supervisory rule to sanctions sought under Rule 11, a court's inherent power, and Bankruptcy Rule 9011, Rule 9011 being in most respects a twin of Rule 11 tweaked for the bankruptcy setting.

We have not decided in a precedential opinion whether the *Pensiero* supervisory rule applies to bankruptcy court proceedings. That having been said, preventing piecemeal appeals and deterring future abuse are, like Mom and apple pie, good things *whatever* the court, and so it would seem, at least at first blush, that the supervisory rule should apply to proceedings in the bankruptcy court as well as to those in the district court.  Certainly, district courts and bankruptcy courts in the Third Circuit believe that to be so.  *See, e.g., In re Tobacco Rd. Assocs., LP*, No. 06-cv-2637, 2007 U.S. Dist. LEXIS 22990, at *96 & n.158 (E.D. Pa. Mar. 30, 2007) (applying supervisory rule to Bankruptcy Rule 9011 after finding it likely that Third Circuit would do so); *In re Brown*, No. 97-5302, 1998 U.S. Dist. LEXIS 19188, at *10 n.2 (E.D. Pa. Dec. 3, 1998) (noting that *Pensiero* rule applies to Rule 9011 sanctions as well as Rule 11 sanctions); *Raymark Indus., Inc. v. Baron*, No. 96-7625, 1997 U.S. Dist. LEXIS 8871, at *28 (E.D. Pa. June 23,

---

[3]  We note that "[g]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995).  A finding of bad faith is "usually" required.  *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 181 (3d Cir. 2002).

1997) (although Third Circuit has yet to rule on issue, rationale for supervisory rule applied to Rule 11 sanctions is same for Rule 9011 sanctions); *In re HSR Assocs.*, 162 B.R. 680, 683 (Bankr. D.N.J. 1994) (motion for sanctions under Rule 9011 untimely under *Pensiero*).

For the following reasons, we need not decide whether, given the facts of this case, the supervisory rule applies to sanctions sought in bankruptcy court under Rule 11, Bankruptcy Rule 9011, or a court's inherent power. It is well established, and we recognized in *Pensiero*, that a district court, after the entry of final judgment and the filing of a notice of appeal, retains the power to adjudicate collateral matters such as sanctions under Rule 11. *Pensiero*, 847 F.2d at 98. Indeed, citing *Pensiero* and as relevant here, we have held that a district court has jurisdiction to impose sanctions under Rule 11 even though the motion seeking the sanctions was filed after the filing of a notice of voluntary dismissal under Rule 41(a)(1)(i). *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989).

> To hold that a district court has no power to order sanctions after a voluntary dismissal is to emasculate Rule 11 in those cases where wily plaintiffs file baseless complaints, unnecessarily sap the precious resources of their adversaries and the courts, only to insulate themselves from sanctions by promptly filing a notice of dismissal.

*Id*.; *see also In re Bath and Kitchen Fixtures Antitrust Litig.*, No. 07-1520, 2008 U.S. App. LEXIS 15957, at *8 n.8 (3d Cir. July 28, 2008) ("A district court retains jurisdiction to decide 'collateral' issues—such as sanctions, costs, and attorneys' fees—after a plaintiff dismisses an action by notice." (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396-98 (1990)).

In *Schering*, we did not even mention the supervisory rule and the prudential reasons underlying that rule, much less did we find that sanctions were barred even though the motion for sanctions was filed almost one and one-half months after the filing of the notice of dismissal. Presumably we did not find the supervisory rule worthy of mention because where there is a voluntary dismissal, there is no danger of piecemeal appeals and

10

no future conduct to deter, the predominant justifications for the rule.

It is, thus, fair to say, given *Schering*, that even if the supervisory rule were to apply to bankruptcy court proceedings, a bankruptcy court would not run afoul of that rule if it were to impose sanctions, at least under Rule 11, following, as here, a voluntary dismissal of one or both of the underlying bankruptcy petitions.[4] Moreover, we have held, albeit before the 1993 amendments to Rule 11 and the 1997 amendments to Bankruptcy Rule 9011, that Rule 9011 is the equivalent sanctions rule under Title 11 to Rule 11. *See Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 960 (3d Cir. 1992); *Landon v. Hunt*, 977 F.2d 829, 833 n.3 (3d Cir. 1992). Rule 9011, it is clear, discourages in bankruptcy proceedings the same conduct proscribed by Rule 11—signing or advocating to the court a paper that violates the certification standard of the Rule—with the purpose of both Rules being to deter baseless filings. Accordingly, there appears to be no reason, at least with reference to a voluntary dismissal, to come to a different conclusion under Rule 9011.

We have just referred to the 1993 amendments to Rule 11 and the 1997 amendments to Bankruptcy Rule 9011. The revisions were substantial, particularly the addition of safe harbor provisions which explicitly place greater restrictions on the imposition of sanctions, including a significant change in the timing of and decision on Rule 11 and Rule 9011 motions. Under amended Rule 11 and amended Rule 9011, a party cannot file a motion for sanctions or submit such a motion to the court if the challenged paper, claim, defense, contention, or denial is

---

[4] Under the circumstances of this case, we need not distinguish between a plaintiff who voluntarily dismisses an action pursuant to Fed. R. Civ. P. 41(a)(1)(i) and one who simply says, as here, that he has voluntarily dismissed the action and the court enters an order of dismissal. Indeed, we see no reason not to take appellees at their word when they conceded four times in their opposition to the motion for sanctions that the petition had been voluntarily dismissed and/or withdrawn, and three times in their opposition to the certification of fees and costs that the petition had been voluntarily dismissed.

withdrawn or corrected within twenty-one days after service of the motion on the offending party. Fed. R. Civ. P. 11(c)(2); Fed. R. Bankr. P. 9011(c)(1). If the twenty-one day period is not provided, the motion must be denied. The purpose of the safe harbor is to give parties the opportunity to correct their errors, with the practical effect being that "a party cannot delay serving its Rule 11 motion"—or, we suggest, its Rule 9011 motion—"until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendments. We wonder, then, whether the supervisory rule, which we adopted in 1988 "[t]o carry out the objectives of expeditious disposition," *Pensiero*, 847 F.2d at 100, retains much if any viability following the 1993 and 1997 amendments to Rules 11 and 9011.[5] As has been noted with reference to Rule 11, "[t]his safe harbor has had the salutary effect of reducing Rule 11 volume while at the same time accomplishing the goal of the Rule—streamlining litigation by eliminating abuses proscribed by the Rule. It has the merit of doing so without burdening the court." Gregory P. Joseph: *Sanctions: The Federal Law of Litigation Abuse* § 2(A)(4), at 25-26 (4th ed. 2008).[6]

---

[5] We recognize, as we wonder, that those of our cases to which we have earlier referred—*Simmerman*, *Prosser*, and *Gary*—were all decided after the 1993 amendments and *Prosser* and *Gary* after the 1997 amendments, yet we did not discuss the effect of the amendments on the supervisory rule.

[6] Two bankruptcy courts in the Third Circuit, aware that Bankruptcy Rule 9011 was amended in 1997 to add a twenty-one day safe harbor period, indicated, understandably, some uncertainty as to what to do with the supervisory rule in light of the amendment. *See Cochran v. Reath (In re Reath)*, No. 04-49188/JHW, Adv. No. 06-1531, 2006 Bankr. LEXIS 4477, at *16-*18 & n.6 (Bankr. D.N.J. Dec. 6, 2006) (concluding that "we do not have compliance . . . with the safe harbor rule . . . [and thus] cannot award sanctions under Rule 9011," but noting that the rationale for when, under *Pensiero*, Rule 11 motions must be brought is the same as that for Rule 9011 motions); *In re Jazz Photo Corp.*, 312 B.R. 524, 534 (Bankr. D.N.J. 2004) ("Whether a timely sanctions motion is required to preserve the twenty-one-day safe harbor period or 'to carry out the objectives of

12

And we wonder whether, at least in one important respect, Bankruptcy Rule 9011 is really the *equivalent* sanctions rule to Rule 11. Bankruptcy proceedings are unique, witness, for example, the automatic stay. Under the Bankruptcy Code, the filing of a petition for bankruptcy operates, with some exceptions, as a stay of the commencement or continuation of certain judicial, administrative, or other actions or proceedings against the debtor, enforcement of judgments against a debtor or the property of the estate, and other acts by creditors against debtors. 11 U.S.C. § 362(a). The purpose of the automatic stay is "to afford the debtor a 'breathing spell' by halting the collection process. It enables the debtor to attempt a repayment or reorganization plan with an aim toward satisfying existing debt." *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994). It also benefits creditors by preventing certain creditors from acting unilaterally to obtain payment from the debtor to the detriment of other creditors. *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).

Congress addressed the serious consequences of the automatic stay by adding an exception to the safe harbor provision in the 1997 amendments to Bankruptcy Rule 9011 when the offending "paper" is a petition for bankruptcy, something it did not do in the amendments to Rule 11 in 1993.[7] Fed. R. Bankr. P. 9011(c)(1)(A). This, of course, renders meritless appellees' argument that because the Chapter 7 petition was voluntarily dismissed within the twenty-one day safe harbor period of Rule 9011, Segal received the relief he had demanded and could not, therefore, seek sanctions. Congress explained the reason for the bankruptcy petition exception:

_____

expeditious disposition,' the filing of a sanctions motion after *entry of final judgment* is procedurally defective." (quoting *Pensiero*, 847 F.2d at 100) (emphasis in original)).

[7] Indeed, the only "exception" in Rule 11, as amended, is seen in subdivision (d), which clarified that Rule 11 is inapplicable to any aspect of discovery because Rules 26(g) and 37 of the Federal Rules of Civil Procedure are specifically designed for the discovery process and should cover the field, rather than the more general provisions of Rule 11. Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendments.

The filing of a petition has immediate serious consequences, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent withdrawal of the petition. In addition, a petition for relief under chapter 7 or chapter 11 may not be withdrawn unless the court orders dismissal of the case for cause after notice and a hearing.

Fed. R. Bankr. P. 9011 advisory committee's notes to 1997 amendments. The exception evidences a concern that a party subject to an automatic stay would be forced to choose between seeking sanctions, which would require it to wait up to twenty-one days before seeking dismissal of the petition, and the immediate filing of a motion to dismiss the bad faith petition. Without the exception, a party would be forced to abandon its request for sanctions in order to seek dismissal of the petition as quickly as possible.

Fortunately, we are able to leave these interesting issues to another day, and move to 28 U.S.C. § 1927, the statute on which the Bankruptcy Court based its award of sanctions against Khoudary, only to later reverse itself anticipating that we would do so if it did not. Unlike Rule 11 and Bankruptcy Rule 9011, which are lengthy and impose specific procedural requirements with which a party seeking sanctions must comply, § 1927 is short and clear:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Section 1927 "requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re*

14

*Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002). Khoudary does not take issue with these requirements, nor does he disagree that the principal purpose of sanctions under § 1927 is "the deterrence of intentional and unnecessary delay in the proceedings." *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297 (3d Cir. 1996) (citation and internal quotation marks omitted). Nor, we note, has Khoudary ever argued that a bankruptcy court does not have the power to impose sanctions under § 1927.

The Bankruptcy Court and the District Court both believed that we would apply the supervisory rule with its Rule 11 foundation to sanctions under § 1927 given how the supervisory rule had been reaffirmed and, in fact, extended by us in *Simmerman*, *Prosser*, and *Gary*. But there are distinctions between Rule 11 (and Bankruptcy Rule 9011) and § 1927, distinctions which make a difference. Importantly, for example, § 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case.[8]

The Tenth Circuit discussed our supervisory rule, but essentially dismissed it, and concluded that a motion under § 1927 is not untimely if made after final judgment.

> Although the Third Circuit has adopted a "supervisory rule" that sanction issues under Rule 11 and the inherent power of the court must be decided before or concurrent to the final judgment, . . . we see no reason to extend such a rule to § 1927 in this circuit. Unlike Rule 11, the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied. Even the Third Circuit seems to recognize that Rule 11 does not require

---

[8] The Bankruptcy Court agreed, and awarded sanctions for the Chapter 7 filing only—the "unnecessary return trip" to the Bankruptcy Court.

such a "protracted scrutiny," because Rule 11 focuses only on a challenged pleading or written motion. Inherent-power sanctions are also capable of a narrow focus, as the inquiry is whether a person has abused the judicial process by acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." But we need not decide whether that capability necessarily allows a court to reach abusive conduct earlier through its inherent power than through § 1927. We simply conclude that §1927 sanctions are not untimely if sought or imposed after final judgment.

*Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006) (citations omitted); *see also*, *e.g.*, *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) ("Unlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 . . . [is not] untimely if made after the final judgment in a case."). Courts within the Third Circuit, almost without exception, have similarly not applied the supervisory rule to motions under § 1927. *See*, *e.g.*, *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 460 n.4 (E.D. Pa. 1998); *In re Jazz Photo Corp.*, 312 B.R. 524, 541 (Bankr. D.N.J. 2004);[9] *see also Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 842-43 (N.D. Ind. 1995) (report and recommendation of magistrate judge adopted by district court and submitted for publication with district court opinion). The *Vandeventer* opinion explained why sanctions under § 1927 can "normally" only be determined when the case is over:

---

[9] One notable exception, however, is *Langer v. Presbyterian Medical Center of Philadelphia*, Nos. 87-4000, 88-1064, 91-1814, 1995 U.S. Dist. LEXIS 9448 (E.D. Pa. July 3, 1995). The *Langer* court, observing that we had interpreted the *Pensiero* rule broadly and predicting that we would be amenable to extending it beyond its Rule 11 roots, applied the supervisory rule to preclude an award of sanctions under § 1927 for conduct which had occurred years before and spawned piecemeal litigation—"three final judgments have been entered . . . and yet, the 'zombie' litigation over this conduct continues." *Id*. at *6-*8.

16

> Section 1927, is different [from Rule 11], in that it is designed to have those counsel who engage in unreasonable and vexatious conduct, pay the "excess costs, expenses and attorney fees incurred because of such conduct." In most such cases, the determination of what are truly excess costs, expenses, and attorney fees cannot be determined until the close of the litigation. In addition, § 1927 has been interpreted to impose a continuing obligation on attorneys to dismiss claims that are no longer viable. Given this "continuing obligation" it is normally best to wait until the end of the litigation to precisely determine what claims were non-viable as well as when it was that they became non-viable.

*Id.* at 845-46 (citations omitted).

We, too, conclude that, to the extent the supervisory rule remains viable, it does not apply where sanctions are sought under § 1927. That having been said, however, a motion for sanctions should be filed within a reasonable time. We need not define in this case the outer limits of "reasonable" given that Segal filed his motion for sanctions a mere nine days after the Chapter 7 petition—the petition that "multiplie[d] the proceedings"— was voluntarily dismissed. Nine days clearly fits within any definition of "outer limits." The Bankruptcy Court, therefore, was well within its rights to determine, as it initially did, that Khoudary could be sanctioned under § 1927.

Or was it? The supervisory rule aside, courts are split as to whether a bankruptcy court has the power to impose sanctions under § 1927, with the answer to that question typically turning on whether, in the words of § 1927, a bankruptcy court is a jurisdictionally separate "court of the United States," or whether, for jurisdictional purposes, there is only one court—the district court—of which a bankruptcy court is an arm, a unit. We have not yet addressed the question.[10]

_____

[10] Courts within the Third Circuit have noted that whether a bankruptcy court has the power to impose sanctions under §

17

Now, of course, no one would disagree that bankruptcy courts are considered to be, and are respected as, courts of the United States. The historical and statutory notes to § 1927, however, refer to the definition of "court of the United States" in 28 U.S.C. § 451, the definition section for Title 28 in its entirety. Section 451 states in pertinent part:

> The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of [Title 28], including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

Bankruptcy courts, it is clear, are not listed explicitly in § 451.

Some courts have held that, given the definition of "court of the United States" in § 451, a bankruptcy court does not have the authority to impose sanctions under § 1927 nor, indeed, to grant relief under other sections of Title 28—a bankruptcy court

---

1927 is an open question. *See, e.g., Hayes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.),* 362 B.R. 657, 661-62 (D. Del. 2007) (noting that Third Circuit has not expressly ruled on question whether bankruptcy court has power to award sanctions under § 1927); *Raymark Indus., Inc.*, 1997 U.S. Dist. LEXIS 8871, at *26 n.11 (questioning whether bankruptcy courts have power to impose sanctions under § 1927); *Argus Group 1700, Inc. v. Steinman*, Nos. 96-8011, 96-8244, 96-8618, 1997 U.S. Dist. LEXIS 1834, at *11 n.2 (E.D. Pa. Feb. 20, 1997) (noting that while Third Circuit has not ruled on whether bankruptcy court has power to impose sanctions under § 1927, several bankruptcy courts have imposed § 1927 sanctions where bankruptcy case was filed in bad faith); *In re Reath*, 2006 Bankr. LEXIS 4477, at *20 n.8(noting that courts have debated availability of § 1927 in bankruptcy courts); *In re Jazz Photo Corp.*, 312 B.R. at 540 n.26 (noting that, although courts are split on applicability of § 1927 to bankruptcy courts and Third Circuit has not ruled on issue, several bankruptcy courts have imposed § 1927 sanctions where bankruptcy case was filed in bad faith).

is simply not a "court of the United States." *See, e.g., Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1086 (10th Cir. 1994) (no authority to impose § 1927 sanctions, especially in light of fact that Congress omitted from 1984 amendments provisions proposed in 1978 amendments, prior to their effective date, which would have added bankruptcy courts to § 451);[11] *Perroton v. Gray (In re Perroton)*, 958 F.2d 889, 893-96 (9th Cir. 1992) (no authority to waive filing fees under 28 U.S.C. § 1915(a)); *Gower v. Farmers Home Admin. (In re Davis)*, 899 F.2d 1136, 1138-40 (11th Cir. 1990) (no authority to award fees under 28 U.S.C. § 2412); *Miller v. Cardinale (In re Deville)*, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002) (no authority to award fees under 28 U.S.C. § 1927); *c.f. Internal Revenue Serv. v. Brickell Inv. Corp. (In re Brickell Inv. Corp.)*, 922 F.2d 696, 699-701 (11th Cir. 1991) (no authority to award fees under definition of "courts of the United States" in 26 U.S.C. § 7430).

The reasoning of those cases is essentially as follows. The definition of "court of the United States" in § 451 is limited to an Article III court, because the judge or judges of the court must "hold office during good behavior," i.e., they are appointed for life, assuming "good behavior." Because bankruptcy judges are appointed for a term of fourteen years under 28 U.S.C. § 152(a)(1), bankruptcy courts do not fall within the § 451 definition of "court of the United States." *See In re Courtesy Inns,* 40 F.3d at 1086 (bankruptcy judges serve a specified term of fourteen years); *In re Perroton*, 958 F.2d at 893-94 (the "good behavior" language of § 451 tracks that of Article III and so a "court of the United States" denotes an Article III court whose judges may be removed only by impeachment). Moreover, bankruptcy courts are not Article III courts because Section I of Article III requires that judges "shall, at stated Times, receive for their Services, a compensation, which shall not be diminished during their Continuance in Office." The salaries of bankruptcy judges are not "immune from diminution by Congress." *N. Pipeline Constr. Co.*

---

[11] Other courts disagree, finding that the proposed amendment was deleted as no longer necessary because Congress had by that time made bankruptcy courts units of the district court. *See, e.g., Stone v. Casiello (In re Casiello)*, 333 B.R. 571, 575 (Bankr. D. Mass. 2005); *see also infra* note 14.

*v. Marathon Pipe Line Co.*, 458 U.S. 50, 61 (1982).

Other courts have held that bankruptcy courts have the authority to impose sanctions under § 1927. The Seventh and Second Circuits have so concluded, albeit without discussion, thereby finding, at least implicitly, that a bankruptcy court is a "court of the United States." *See Adair v. Sherman*, 230 F.3d 890, 895 n.8 (7th Cir. 2000); *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir. 1991).[12]

A number of courts, however, have gone beyond a bare bones finding that a bankruptcy court is—or is not—a "court of the United States" and concluded that, although a bankruptcy court is not a jurisdictionally separate court for purposes of § 451, it, nonetheless, is within the definition of § 451 because of its status as a unit of the district court, with the district court clearly being a "court of the United States." *See, e.g., Volpert v. Ellis (In re Volpert)*, 177 B.R. 81, 88-89 (Bankr. N.D. Ill. 1995), *aff'd*, 186 B.R. 240 (N.D. Ill. 1995), *aff'd on other grounds*, 110 F.3d 494 (7th Cir. 1997).[13] These cases conclude that bankruptcy courts are not separate from, but rather are units of the district court and thus, by analogy, "courts of the United States," deriving their jurisdiction from 28 U.S.C. § 157(a), which grants a district court discretion to refer bankruptcy matters to the bankruptcy courts.

---

[12] We note that *Adair* cited *In re Volpert*, 110 F.3d 494 (7th Cir. 1997), as the sole support for its conclusion that bankruptcy courts can impose § 1927 sanctions, but the *Volpert* court explicitly left that question unanswered. *See id.* at 500.

[13] Bankruptcy courts have also been deemed to be units of the district court under statutory provisions other than § 451. *See, e.g., United States v. Yochum (In re Yochum)*, 89 F.3d 661, 668-69 (9th Cir. 1996) (bankruptcy courts are units of district court and are by analogy "courts of the United States" as defined by 26 U.S.C. § 7430); *Grewe v. United States (In re Grewe)*, 4 F.3d 299, 304 (4th Cir. 1993) (district courts are "courts of the United States" and bankruptcy courts, as units of district court, qualify as "courts of the United States" under 26 U.S.C. § 7430).

*See also D&B Countryside, L.L.C. v. Newell (In re D&B Countryside, L.L.C.)*, 217 B.R. 72, 76 n.5 (Bankr. E.D. Va. 1998) (bankruptcy court is unit of district court and can grant costs under 28 U.S.C. § 1920 by virtue of 28 U.S.C. §§ 151 and 157).

Perhaps the most comprehensive examination of the jurisdictional scheme created in response to *Northern Pipeline* by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub. L. No. 98-353, 98 Stat. 333 (1984),[14] is found in the bankruptcy court's opinion in *In re Volpert*. The court concluded, following an exhaustive analysis, that the answer to whether a bankruptcy court can entertain a motion under § 1927 does not turn on whether it is a "court of the United States"; rather, it turns on whether § 1927 should be construed to prevent a referral that is "clearly" within the scope of § 157 and the "very broad referral order" of the district court. *In re Volpert*, 177 B.R. at 89-90. The court determined that § 1927 should not be so construed. Because, therefore, a district court, as a court of the United States, may impose sanctions under § 1927, it may also refer a motion which requests the imposition of such sanctions to a bankruptcy court. *Id.* at 90.

The Seventh Circuit affirmed *In re Volpert* on an alternative ground—the bankruptcy court had "ample authority" to sanction misbehavior under 11 U.S.C. § 105, Bankruptcy Rule 9011, and the court's inherent power. *In re Volpert*, 110 F.3d at 500-01. That being so, the Seventh Circuit found no need to reach the question of whether the bankruptcy court could also impose

---

[14] *Northern Pipeline* held that the grant to the bankruptcy courts of original jurisdiction over all bankruptcy matters in the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978), did not pass constitutional muster. Congress subsequently passed BAFJA, thereby establishing the jurisdictional scheme in effect today. Under BAFJA, Congress empowered district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy courts. 28 U.S.C. § 157(a). Bankruptcy courts became units of the district courts and bankruptcy judges became judicial officers of the district courts. 28 U.S.C. §§ 151 and 152.

21

sanctions under § 1927. *Id.* at 500. The Eighth Circuit similarly saw no need to do so, stating as follows:

> Although we have questioned whether a bankruptcy court has the power to award sanctions under § 1927, we conclude that the court had ample alternative authority to sanction . . . . Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel. . . . [and] jurisdiction under Bankruptcy Rule 9011 to assess attorney's fees as sanctions. . . .

*Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir. 2000) (citations omitted).

We will reach the question. We find that although a bankruptcy court is not a "court of the United States" within the meaning of § 451, it is a unit of the district court, which is a "court of the United States," and thus the bankruptcy court comes within the scope of § 451. Under 28 U.S.C. § 157 and the Standing Order of the United States District Court for the District of New Jersey, which delegate authority to the bankruptcy courts in the District of New Jersey to hear Title 11 cases as well as "any and all proceedings" necessary to hear and decide those cases, the Bankruptcy Court had the authority to impose sanctions against Khoudary under § 1927.

We will, therefore, vacate the order of the District Court which affirmed the orders of the Bankruptcy Court denying Segal's motion for sanctions and his motion for reconsideration of that denial. We will remand for a determination as to whether sanctions should be imposed against Khoudary under § 1927 and/or against SSR and Khoudary under one or more of the Rules we have discussed or, perhaps, under § 105. Although we have not found it necessary to address all the ways in which § 1927, the Rules, and § 105 differ in scope and impact, we trust that this Opinion gives the parties, the Bankruptcy Court, and the District Court the guidance they may heretofore have lacked.