### In re AMERICAN REMANUFACTURERS, INC., et al., Debtors.

**Montague S. Claybrook, as Chapter 7 Trustee of the estates of American Remanufacturers, Inc., et al., Plaintiff,**

v.

**AutoZone Texas, L.P.; AutoZone, Inc., General Partner to AutoZone Texas, L.P.; and AutoZone Parts, Inc., Defendants.**

Bankruptcy No. 05–20022 (PJW).
Adversary Nos. 07–51597 (PJW), 07–51603 (PJW).

United States Bankruptcy Court, D. Delaware.

July 28, 2011.

L. Jason Cornell, Sheldon K. Rennie, Fox Rothschild LLP, Wilmington, DE, Michael G. Menkowitz, Joshua T. Klein, Fox Rothschild LLP, Philadelphia, PA, Michael R. Lastowski, Sommer L. Ross, Duane Morris LLP, Wilmington, DE, Stephen W. Ragland, Kristen C. Wright, Russell E. Stair, Bass, Berry & Sims PLC, Memphis, TN, for Defendants.

Alan L. Frank, Alan L. Frank Law, Associates, P.C., Elkins Park, PA, Attor-

neys for Montague S. Claybrook, Chapter 7 Trustee for the estates of American Remanufacturers, Inc., et al.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to Defendant's Motion for Attorneys' Fees, Costs, and Sanctions. (Doc. # 355.) For the reasons discussed below, I will grant the motion as to AutoZone's costs.

### Background

This motion for sanctions follows the final determination of two actions brought by Montague S. Claybrook, as Chapter 7 Trustee ("Trustee") of the estates of American Remanufacturers, Inc. and nine affiliates (the "Debtors"), against Auto-Zone Texas, L.P., AutoZone, Inc., and AutoZone Parts, Inc. (the "Defendants" or "AutoZone").

Trustee's first cause of action against AutoZone sought to avoid preferential transfers and, in the alternative, fraudulent transfers (the "Avoidance Action," Adv. Proc. No. 07–51597). Trustee sought to recover $4,395,295.26 million as avoidance transfers, as well as pre- and post-judgment interest, costs, and attorneys' fees. The second cause of action sought to recover accounts receivable (the "Accounts Receivable Action," Adv. Proc. No. 07–51603). The Accounts Receivable Action sought to recover $4,557,476, together with pre- and post-judgment interest, costs, and expenses. In addition, the original complaint in the Accounts Receivable Action sought $2,280,961.00 in "accruing finance charges . . . in the amount of 1.5% per month (18% per annum)."

The Avoidance Action and the Accounts Receivable Action were filed in June 2007.

Trustee dismissed the Avoidance Action with prejudice in June 2010. (Doc. # 215.) The Court held a two-day trial in the Accounts Receivable Action on April 4 and 5, 2011 and entered its Findings of Fact and Conclusions of Law on June 9, 2011, finding that Trustee was not entitled to any recovery from AutoZone because AutoZone's credits more than off set the accounts receivable.

AutoZone subsequently filed this motion for attorneys' fees, costs, and sanctions, pursuant to 28 U.S.C. § 1927, Fed. Rule Civ. Proc. 16(f) and Local Rule 7016–2, Fed. Rule Bankr.Proc. 7054(b), and this Court's equitable power to police itself. Movants assert that the conduct of Trustee and his counsel, Alan L. Frank[1], constituted unreasonable and vexatious multiplication of these proceedings.

### Discussion

Pursuant to 28 U.S.C. § 1927, an attorney may be liable for the costs and expenses of the opposing party:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■ "Section 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir.2008) (internal quotation marks omitted). Section 1927 "covers the multiplication of proceedings that pro-

1. Alan L. Frank became Trustee's counsel in the Accounts Receivable Action in September

2009 and in the Avoidance Action in January 2010.

long the litigation of a case," and as such "it has been interpreted to impose a continuing obligation on attorneys to dismiss claims that are no longer viable." *Id.* at 101–102 (internal quotation marks omitted).

■ Federal Rule of Bankruptcy Procedure 7054(b) provides that "[t]he court may allow costs to the prevailing party.... " The award of costs is discretionary. *Northwestern Corp. v. Magten Asset Mgmt. Corp. (In re Northwestern Corp.),* 326 B.R. 519, 529 (Bankr.D.Del.2005). "Costs" are limited by the statutory guidelines in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees for disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Id.*

Permissible costs for witnesses are set forth in 28 U.S.C. § 1821, and these include travel expenses, an attendance fee of $40, and a subsistence allowance when overnight stay is required.

■ The proceedings in these cases make clear that Trustee and his counsel have increased costs by unreasonably multiplying these proceedings. The first indication of this unreasonable behavior was when Trustee's counsel refused to discuss the merits of the case or to participate in any meaningful way at the Court-ordered mediation on November 12, 2009. *See* Mediator's Certificate of Completion (App A.30–31 [2]). Trustee's counsel asserts that he refused to discuss the merits when he realized at the mediation that the mediator had a conflict of interest. (Doc. # 364, p. 6.) However, as AutoZone points out, the mediator was chosen by Trustee's counsel. (Doc. # 366, C000008–11.) Further, Trustee has offered no reason why this conflict was not discovered until the day of the mediation.

During the month following the failed mediation, Trustee's counsel deposed all of AutoZone's fact witnesses and at that point, at the very latest, he knew that the claims against AutoZone were meritless. Trustee had failed to find any factual support for the avoidance actions or any proof to rebut AutoZone's defenses, its business records, or the testimony of its employees. This conclusion is underscored by the following excerpts from Trustee's deposition testimony from February and April 2010:

Q. Now, did you participate in the preparation of these two complaints that were filed on your behalf?

A. No.

Q. Did you investigate any of the allegations of the complaints before they were filed?

A. No.

Q. Did you instruct any of your professionals to investigate the allegations before the complaints were filed?

A. Specifically, no.

---

**2.** Citations to the Appendix refer to Movant's Appendix. (Doc. # 360.)

Q. Have you reviewed any information that forms the basis for the complaints?

A. No.

Q. Did you conduct any inquiry into whether the transfers alleged in paragraph 12 of the avoidance complaint actually occurred?

A. No.

Q. Did you instruct any of your professionals to make that inquiry?

A. No.

Q. Did you review any evidence, information from any source to determine whether you had sufficient grounds to file the avoidance complaint?

A. I did not.

\* \* \*

Q. What efforts, if any, did you take to verify any of the allegations of the avoidance complaint before it was filed?

A. None.

Dep. of Montague S. Claybrook, Feb. 24, 2010, at 88:4–90:1. (App. A250–252.)

Q. Did you authorize the filing of the accounts receivable action?

A. Yes.

Q. And did you review the complaint before it was filed?

A. No.

*Id.* at 92:21–93:2. (App. A253–54.)

Q. When was the last time you read the [accounts receivable] complaint?

A. If I ever read it at all—I'm not certain that I've read this in its entirety.

*Id.* at 94:7–9. (App. A255.)

Q. Did you consult with any former employees of the debtor to confirm the receivables?

A. No.

Q. Did you take any steps to verify whether the accounts receivable balances were subject to any credits or other deductions?

A. No.

Q. Do you have any knowledge sitting here today of whether all appropriate credits and deductions have been made against the accounts receivable balances that you reviewed?

A. No.

*Id.* at 97:23–98:10. (App. A256–57.)

Q. What steps were taken to verify that this figure, $4,395,295.26, was accurate before this complaint was filed?

A. I don't know.

Q. Did you personally take any steps to verify that?

A. No, I didn't.

Q. Did you instruct any of your professionals to take any steps to verify that?

A. No.

*Id.* at 81:8–17. (App. A247.)

Q. And did you review the [Accounts Receivable] complaint before it was filed?

A. No.

*Id.* at 92:24–93:2. (App. A253–54.)

Q. Take a look with me at paragraph 48 [of the Accounts Receivable complaint]. 48 alleges that AutoZone has failed to pay ARI for the parts requested by AutoZone and provided by ARI, and currently, $139,625.77 remains past due. Do you have any knowledge, evidence, or information of any kind from any source to verify the amount that is alleged to be owing by AutoZone in that paragraph?

A. None at all.

Q. And if I ask you the same question about the amounts that are alleged to be owed to CCT or ATSCO, would your answer be the same?

A. They would be.

*Id.* at 100:2–13. (App. A259.)

Q. Sitting here today, what evidence, knowledge, or information do you have from any source to support the assertion in paragraph 36 [of the Accounts Receivable complaint] that AutoZone is obligated to pay finance charges in the amount of 1.5 percent per month or 18 percent per annum?

A. Absolutely none.

*Id.* at 99:3–8 (App. A258.)

Similarly, Trustee's Rule 30(b)(6) designee, Hugo Gravenhorst, testified that Debtors had no signed sale policy indicating a right to finance charges:

A. I'm hoping that a signed statement of sale policy will surface.

Q. It hasn't surfaced since these complaints were filed in 2007, has it?

A. That is correct.

Q. Do you have any indication that such a signed agreement exists?

A. No, but there's always hope. It's like searching for a needle in a haystack.

\* \* \*

Q. Again, you don't have a statement of sale policy signed by AutoZone, do you?

A. Haven't found it yet.

Q. Has any employee of the debtor told you that such an agreement exists?

A. No one has told me one way or the other.

Dep. of Hugo Gravenhorst, April 14, 2010, at 154:25–155:8, 156:3–9. (Doc. # 169.)

Q. Sitting here today as the designee for the trustee, what evidence, information, or knowledge do you have from any source to support the assertion that finance charges accrued on Auto[Z]one accounts in the amount of 1.5 percent per month or 18 percent per annum?

A. Again, per the statement of sales policy, that's the penalty rate, so to speak.

Q. Anything other than the statement of sales policy?

A. No.

Q. And I think it was your earlier testimony that you've not seen a statement of sales policy that's been signed by Auto[Z]one?

A. I don't think I've seen one. That's correct.

Dep. of Hugo Gravenhorst, Feb. 23, 2010, at 198:12–199:2. (Doc. # 104.)

In light of this testimony, Trustee and his counsel had no reasonable basis to believe that some document existed to support the finance charge and attorneys' fees claims. Certainly, pursuing a $2.2 million claim with the "hope" that a document will magically appear in discovery is an abusive and vexatious litigation tactic. Trustee's counsel finally removed the claim for finance charges and attorneys' fees from the Accounts Receivable Action in October of 2010, but it is clear that Trustee and his counsel were well aware that this claim was baseless as early as February 2008 and no later than the depositions taken in February 2010. Even if Trustee's initial pleading of the finance charge and attorneys' fees claim was in good faith, Trustee and his counsel should have abandoned this when the evidence clearly demonstrated that a "Statement of Sales Policy" never existed as to AutoZone.

The deposition transcript also makes clear that the Avoidance Action was baseless. Trustee abandoned the Avoidance Action in June of 2010, only after Auto-Zone's counsel sent a draft Rule 11 motion for sanctions. (Doc. # 235, Ex. G; Doc. # 211, p. 5.) Not only were the claims in the Avoidance Action contrary to applicable law, Trustee and his counsel had no supporting facts. At no time in the nearly three years that Trustee pursued the Avoidance Action was Trustee or his counsel ever able to identify the alleged "transfers" in the amount of $4,395,295.26. Trustee admitted in his deposition testimony that he had no records to support this amount or even any basic knowledge about these transfers:

Q. Do you have in your custody, possession, or control any records that identify those transfers that are alleged in paragraph 12?

A. I do not.

\* \* \*

Q. Of this $4.3 million figure that's identified in paragraph 12, how much of those alleged transfers were made by ATSCO?

A. I don't know.

Q. Who would have that information?

A. Who? I don't know.

Q. Is that information in your possession, custody, or control or that of your professionals?

A. I don't know.

Q. How much of those alleged transfers were made by CCT?

A. I don't know.

Q. Do you have any knowledge, information, or evidence from any source that any of those transfers that are alleged here in the amount of $4.3 million were made by American Remanufacturers, Inc.?

A. I don't know.

\* \* \*

Q. Have you seen any data that identifies that precise amount of transfers?

A. No.

Q. Are you aware of the manner of computation of that amount?

A. No.

Q. If that amount is avoided as a preferential transfer, how will you determine what portion is attributable to ATSCO as opposed to ARI or as opposed to CCT?

A. I don't know.

Claybrook Dep. 82:1–4, 82:15–83:7, 83:12–22. (App. A248–49.)

Trustee testified that he would be relying on Mr. Gravenhorst, his Rule 30(b)(6) designee and proffered, but excluded, expert witness to provide factual support for the Avoidance Action. *Id.* at 90:9–14. (App. A252.) However, Mr. Gravenhorst also failed to identify the alleged avoidable transfers during any of his three deposition sessions:

Q. It says [in paragraph 12 of the Avoidance Action] one or more of the debtors transferred or caused to be transferred those credits. Sitting here today, do you have any information about which of those debtors made the transfers that are alleged?

A. No, I don't.

Gravenhorst Dep., Feb. 23, 2010, at 102:17–21 (App. A239.)

Q. Have you reviewed any documents that form the underlying basis for any transfers alleged in the avoidance action?

A. I've seen plenty of core credit reports, if that's what you're asking.

Q. Which of those core credit reports add up to $4.3 million?

A. I don't know.

*Id.* at 103:23–104:6. (App. A240–41.)

Finally, the deposition testimony makes clear that Trustee and his counsel had no basis to challenge AutoZone's assertion that the accounts receivable were offset by credits equaling at least as much as the amounts outstanding. Nonetheless, Trustee pursued the Accounts Receivable Action to trial.

Leading up to the trial date, Trustee's counsel conducted a bad faith discovery campaign, for which the Court has already fined Trustee's counsel $100,000. (Doc. # 246.) Then, at trial, Trustee offered no proof supporting that action. All of the facts supporting the Court's ruling in favor of AutoZone were known to Trustee and his counsel years ago; indeed, the Open Items Reports were the key records at trial, and AutoZone had provided these to Trustee and his counsel as early as 2007. As stated in my findings of fact and conclusions of law, Trustee "did not offer any evidence at trial either contradicting or challenging the Open Items Reports, and in fact Plaintiff accepted and stipulated to AutoZone's outstanding accounts payable balance reflected in the Open Items Reports as the gross amount of accounts receivable owed to the Companies, without any credits applied." (Doc. # 353, at 22.) Further, "[t]he Trustee presented no proof to refute or contradict AutoZone's evidence as to the nature, amount, validity, or applicability of any of the credits owing against the accounts receivable." *Id.* at 31.

Trustee's failure to provide any evidence in support of his arguments at the Accounts Receivable trial indicates that his counsel had no basis for contesting AutoZone's claims for credits against the accounts receivable. Trustee's decision to proceed to trial without any evidence sup-porting his claims can only be seen as harassing.

■ In addition, Trustee's decision to proceed to trial without having even reviewed the complaints is an abuse of his fiduciary duties as trustee of the Debtors' estates. The United States' Trustees' Handbook for Chapter 7 Trustees provides as follows concerning the supervision of professionals:

> The trustee is a fiduciary and representative of the estate. Trustees cannot avoid or abdicate their responsibilities by employing professionals and delegating to them certain tasks. It is critical that the trustee oversees the work performed by professionals and exercises appropriate business judgment on all key decisions.

U.S. Dep't of Justice Executive Office for United States Trustees, Handbook for Chapter 7 Trustees, at 8–24 (2002). Trustee's testimony demonstrates that he abdicated his responsibility by not overseeing the work of his counsel in both the Avoidance and Accounts Receivable Actions.

■ Accordingly, I find that Trustee and his counsel pursued these proceedings even after it became clear the Avoidance Action and Accounts Receivable Action were not viable. I will award AutoZone its costs incurred since the failed mediation, as that was the point in which Trustee and his counsel's conduct became clearly vexatious and unreasonable.

My award of sanctions pursuant to 28 U.S.C. § 1927 and Rule 7054(b) is for AutoZone's costs incurred, beginning with the failed mediation. Costs will be limited to those categories delineated in 28 U.S.C. § 1920: fees of the clerk, fees for transcripts necessarily obtained, fees for witnesses, and fees for copies. These costs are set forth in the table below.

| Category | Amount |
| --- | --- |
| Transcripts | $ 12,793.95 |
| Witness Travel | $ 4,407.58 |
| Witness Statutory Costs | $ 3,195.00 |
| Copies | $ 15,309.77 |
| Total | $ 35,706.30 |

(See Doc. # 356, 361.)

I decline to award attorneys' fees, however, as such an award runs contrary to the American Rule that all parties must pay their own way. *See Chase Manhattan Bank v. Iridium Africa Corp.*, 474 F.Supp.2d 613, 617 (D.Del.2007) (citing *Ford v. Temple Hosp.*, 790 F.2d 342, 346 (3d Cir.1986)). Even though there are exceptions to the American Rule for bad faith or vexatious litigation, *see e.g. Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), I decline here to depart from the rule.

### Conclusion

For the reasons outlined above, I will grant AutoZone's motion for costs, in the total amount of $35,706.30, to be assessed jointly and severally against Montague S. Claybrook and Alan L. Frank.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, Defendants' Motion for Fees, Costs and Sanctions (Doc. # 355) is hereby **granted** in the amount of $35,706.30 which amount is assessed jointly and severally against Montague S. Claybrook and Alan L. Frank.